In the Matter of the Arbitration of Certain Differences between LUMMUS COMPANY, Petitioner,

and

COMMONWEALTH OIL REFINING COMPANY, Inc., Respondent.

United States District Court
S. D. New York.
June 7, 1961.

Cahill, Gordon, Reindel & Ohl, New York City, for petitioner. Lawrence J. McKay, Raymond L. Falls, Jr., Thomas F. Curnin, Joseph M. McLaughlin, New York City, of counsel.

Sullivan & Cromwell, New York City, for respondent. Richard deY. Manning, New York City, Ruben Rodriguez-Antongiorgi, San Juan, P. R., Milton Pollack, John F. Dooling, Jr., New York City, of counsel.

DAWSON, District Judge.

Commonwealth Oil Refining Company, Inc. (hereinafter referred to as "Commonwealth") moved by order to have the Lummus Company (hereinafter referred to as "Lummus") show cause why all proceedings in connection with the arbitration demanded by Lummus should not be stayed until after Lummus has brought on for hearing its pending petition to compel arbitration and until the determination thereof. Alternatively, Lummus was ordered to show cause why an immediate trial of the issues of arbitrability and the making of the alleged contracts should not be had. This motion was argued on February 28, 1961. Decision was reserved until after a motion to remand, which was then *sub judice* before Judge Weinfeld, was decided, 195 F.Supp. 47.

A History of the Proceedings

The problems confronting the Court arise out of two contracts between Lummus and Commonwealth dated July 8, 1954, and March 14, 1956. Under these contracts Lummus was to construct oil refining facilities for Commonwealth in Puerto Rico for which Commonwealth paid Lummus more than $32,000,000. Commonwealth alleges that it entered into these contracts on the basis of guaranties given by Lummus as to anticipated net income and productive capacity. After three years of operation, instead of realizing the expected income, Commonwealth accumulated losses allegedly amounting to over $14,000,000. Commonwealth charges that these "losses were caused by Lummus' fraudulent and misleading representations as to the yield capabilities, operating costs and resulting profits which induced Commonwealth to enter into the two challenged contracts." Commonwealth's memorandum in support of application for stay, pages 3 and 4.

Negotiations attempting to reconcile the differences between the parties were

conducted in 1959. In February and March of that year, Commonwealth retained Purvin & Gertz, Inc., as consulting engineers to ascertain the amount of their claims against Lummus. Between April 29th and May 4th, Lummus mailed Commonwealth a demand for arbitration, dated April 27, 1959, claiming $4,697,997.85, with interest, and demanding "a determination of any setoffs or counterclaims against the undersigned which Commonwealth may assert." On May 4, 1959, enforced with the Purvin & Gertz studies, Commonwealth filed a complaint in the District Court of Puerto Rico seeking $60,000,000 as damages caused by Lummus' fraud, rescission, and other relief. Simultaneously Commonwealth filed a motion in the Puerto Rican court to stay the arbitration demanded by Lummus.

On or about May 20, 1959, Lummus commenced an action in the Supreme Court of New York County seeking to compel Commonwealth to proceed with arbitration. This petition was removed to the Southern District on May 25th. The details of the play and counterplay proceedings engaged in by the parties immediately thereafter are set forth in Lummus Co. v. Commonwealth Oil Refining Co., 1 Cir., 1960, 280 F.2d 915, 919 and need not be reviewed here.

The next action having pertinence to this proceeding took place on July 20, 1959, when Judge Ruiz-Nazario entered an order staying the arbitration "until this Court enters its order finally determining whether there are valid and existing arbitration agreements * *." and granting the preliminary injunction enjoining Lummus from taking any steps in furtherance of the arbitration in the Southern District of New York or elsewhere.

Judge Ruiz-Nazario's order was appealed to the First Circuit. An opinion was rendered on June 16, 1960, in which the Court of Appeals vacated the District Court orders. The Circuit suggested that the District of Puerto Rico, though it had been the first court to pass on the action, stay its own proceedings to permit a resolution of the matters in New York. On rehearing the First Circuit's position was clarified. The court said that it had decided that Commonwealth, in its $60,000,000 Puerto Rican action, was not really pursuing a restitutionary remedy, that the true nature of the action was one for damages and rescission of the arbitration agreement alone. The opinion on rehearing explains the stay which it suggested as follows:

"The stay that we indicated is not the equivalent of the stay which would be entered upon a motion for a stay of the action under an arbitration statute. Such a stay would indeed settle all questions of arbitrability. The stay we suggested is based on the belief that there should be no further duplication of litigation in two Federal courts of concurrent jurisdiction. We intimated at the beginning of our opinion that there would have been sound reasons for the court below to have deferred initially to the New York court. * * * Under the terms of the arbitration agreement arbitration will take place in New York. New York law will be controlling. We think that a court in New York should supervise the arbitration." 280 F.2d at page 933.

Thereafter the Puerto Rican district court entered an order on mandate staying further proceedings "until the entry of a final judgment or order by a Court of competent jurisdiction in the State of New York determining the issues of the arbitrability of the claims between the parties and until the making, after such determination, of such further Order of this Court respecting the stay or continuance of this action in whole or in part as is appropriate in the light of the final determination of such court of competent jurisdiction in New York." This order was signed by Judge Ruiz-Nazario on January 3, 1961. There are no additional proceedings currently

taking place in either the First Circuit or the District of Puerto Rico.

A motion to remand the action to the State court was argued before Judge Weinfeld on January 31, 1961. In an opinion dated June 2, 1961, the motion to remand was denied. Judge Weinfeld held that Puerto Rico is a "State" for purposes of diversity jurisdiction and that its inclusion as a State under section 1332(d) of Title 28 United States Code, was not beyond the constitutional competence of Congress. In addition the court held that section 1450 of the New York Civil Practice Act should be applied. Contentions that this statute provides a "peculiar" remedy and that section 1450 is merely procedural and thus not binding on the federal court were rejected. After stating that "the essential inquiry is whether it would 'significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court' ", Judge Weinfeld concluded that the New York Arbitration Law was substantive and thus must be applied by the federal court in this action.

On February 3, 1961, Commonwealth brought on an order, returnable on February 7th, demanding that Lummus show cause why proceedings in connection with the arbitration should not be stayed until determination of the motion to remand and until the determination of the motion now before this Court. Judge Bryan, in a memorandum opinion dated February 14, 1961, held that "proceedings before the American Arbitration Association will be stayed until the determination of the motion for remand, and in the event that such

motion is denied, until the respondent's motion [this motion] addressed to the petition to compel arbitration is heard."

### The Issue Before This Court

At the present juncture this Court must decide whether to issue a temporary restraining order staying arbitration proceedings until Lummus has brought on for hearing its pending motion to compel arbitration and until the determination of that motion. In the alternative this Court has been asked to stay all proceedings and order an immediate trial of the controversy concerning the making of the contracts and the arbitrability of the issues in conflict. If this Court denies Commonwealth's application, the American Arbitration Association will proceed with the arbitration and with a determination of the claims.[1]

### The Applicable Law

The law to be applied in this action, as intimated by the parties and held by Judge Weinfeld, is New York law, specifically, the New York Arbitration Statute. The provisions with which the Court is now concerned are those of Section 1450.

"§ 1450. *Remedy in case of default.*

* * * A party aggrieved by the failure, neglect or refusal of another to perform under a contract or submission providing for arbitration * * * may petition the supreme court * * * for an order directing that such arbitration proceed in the manner provided for in such contract or submission. * * * The court * * * shall hear the parties and upon being satisfied that there is no substantial issue as to the making of the con-

1. " * * * the Administrator must reiterate its position that as an administrative, non-judicial agency, we might not determine whether or not this matter is arbitrable. Further, in line with the Association's policy, as determined by its Arbitration Law Committee * * * the Association will not require that a motion to compel arbitration be made as

a prerequisite to our administration and the Association will proceed with the administration of the arbitration in the absence of an agreement between the parties to the contrary or an order of the court staying the arbitration." Letter of Wallace Bock, Director, Commercial Tribunals of the American Arbitration Association, dated January 12, 1961.

tract or submission or the failure to comply therewith, the court * * hearing such application, shall make an order directing the parties to proceed to arbitration in accordance with the terms of the contract or submission.

"If evidentiary facts be set forth raising a substantial issue as to the making of the contract or submission or the failure to comply therewith, the court * * * shall proceed immediately to the trial thereof. If no jury trial be demanded by either party, the court * * * shall hear and determine such issue. * * * Whenever an immediate trial is ordered the order therefor shall provide that if the court, or where a jury has been demanded, the jury, find that a written contract providing for arbitration was made * * * and that there was a failure to comply therewith, the parties shall proceed with the arbitration in accordance with the terms of the contract or submission, and said order shall provide that if the court or jury * * find that there was no such contract or submission or failure to comply therewith then the proceeding shall be dismissed."

Thus under section 1450 the judge before whom the petition to compel arbitration is brought must order such arbitration unless it appears that a substantial issue as to the making of the contract or submission or the failure to comply therewith exists. In the latter event, an immediate trial should be ordered.

### Conclusions

Determination of this controversy has lagged for more than two years. The granting of a temporary stay, as the sole relief on this motion, would serve only to further delay a resolution. A petition to compel arbitration is now pending in this court. The ultimate is-sues raised by the parties, including allegations of fraud and the non-existence of an arbitrable issue, should be conclusively determined as quickly as possible. The proper forum for such a determination in this case, in its present posture, is a trial and final action on the petition to compel arbitration. At the same time, if the court grants no stay, the American Arbitration Association will proceed to arbitration of the controversy. See footnote 1, supra. If later it is held that no arbitrable issue existed, or that the arbitration agreement was induced by fraud, then the efforts expended on an arbitration of the controversy would be wasted.

That a substantial issue has been raised as to the making of the contract becomes abundantly clear from an analysis and review of the allegations and counter-allegations of the parties. If this action were still in the State court, under section 1450, the Supreme Court judge considering the petition would set the action down for an immediate trial. Because of the unique machinery of the Southern District court, the petition is not before a single judge but before the court itself. In this court, where a judge is assigned to a specific part as a result of the exigencies of efficiency, a single case may come before more than one judge. Separate aspects of this case, for example, have already been ruled on by three members of this court.

In accordance with section 1450, and in fulfillment of the intent of that section, a substantial issue has been raised and the matter should be set down for an immediate trial. The petition is before the court and will be tried by the court; more particularly, by a judge sitting in the civil trial part, jury (if that is demanded) or non-jury (if a jury is waived). It is ordered that the case be placed at the head of the ready day calendar for trial in October. Pending determination of the trial, all proceedings for arbitration shall be stayed.

Submit order.