**LUMMUS COMPANY, Petitioner,**

v.

**COMMONWEALTH OIL REFINING COMPANY, Inc., Respondent.**

**LUMMUS COMPANY, Petitioner,**

v.

**Honorable Archie O. DAWSON, Respondent.**

**No. 93, Dockets 27100, 27110.**

United States Court of Appeals
Second Circuit.

Argued Sept. 25, 1961.

Decided Nov. 14, 1961.

Certiorari Denied Feb. 19, 1962.
See 82 S.Ct. 601.

John T. Cahill, New York City (Cahill, Gordon, Reindel & Ohl, Lawrence J. McKay, Raymond L. Falls, Jr., Thomas F. Curnin, New York City, on brief), for petitioner.

John F. Dooling, Jr., New York City (Sullivan & Cromwell, Richard DeY. Manning, Milton Pollack, New York City, Ruben Rodriquez-Antongiorgi, San Juan, P. R., on brief), for respondent, Commonwealth Oil Refining Co., Inc.

Before LUMBARD, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

FRIENDLY, Circuit Judge.

An appeal and an alternative petition for mandamus bring us a host of questions in this sizable litigation, now well into its third year without even an approach to the merits. Much of the previous history is told in Lummus Co. v. Commonwealth Oil Refining Co., 280 F.2d 915 (1 Cir.), rehearing denied, 280 F.2d 932, cert. denied, 364 U.S. 911, 81 S.Ct. 274, 5 L.Ed.2d 225 (1960) [sometimes hereafter "the First Circuit decision"], and in Judge Weinfeld's opinion denying Lummus' motion to remand, 195 F.Supp. 47 (S.D.N.Y.1961). Nevertheless a brief discussion of the background is here required.

The controversy between Lummus and Commonwealth stems from two contracts, one executed July 8, 1954, and the other March 14, 1956, wherein Lummus, a Delaware corporation, agreed to construct an initial and an expanded oil refinery in Puerto Rico for Commonwealth, a Puerto Rican corporation. Each contract contained an agreement to arbitrate, paragraph 25.1, which we quote in the margin.[1] The contracts provided they "shall be deemed to have been made, executed and delivered in New York"; however, they did not say they were to be governed by New York law.

Commonwealth having withheld payment of large sums claimed by Lummus for services and materials, Lummus, on April 29, 1959, mailed a demand for arbitration of its claims, aggregating $4,697,997.85, and "any setoffs or counterclaims * * * which Commonwealth may assert." Commonwealth responded by commencing, in the District Court for Puerto Rico, an action for $60,000,000 and "other sums as yet undetermined" as damages for alleged fraudulent or negligent misrepresentations in the studies

---

1. "Any controversy or claim arising out of or relating to this Agreement shall be settled by arbitration in accordance with the rules, then obtaining, of the American Arbitration Association. This Agreement shall be enforceable and judgment upon any award rendered by all or a majority of the arbitrators may be entered in any court having jurisdiction. The arbitration shall be held in New York, U. S. A. It is agreed, however, that this Agreement shall not apply to claims or damages for which either party has contracts of insurance protecting their respective interests."

and projections prepared by Lummus prior to execution of the contracts; Commonwealth moved also, pursuant to 32 Laws of Puerto Rico (Ann.) § 3204 (4) (a), for a stay of the arbitration on the ground that the arbitration agreements "are invalid or do not exist by reason of" the alleged misrepresentations. May 20, Lummus moved in the New York state courts to compel arbitration pursuant to New York Civil Practice Act, § 1450; Commonwealth removed that proceeding to the District Court for the Southern District. On the morning of May 29 counsel for Lummus notified New York counsel for Commonwealth that Lummus was about to move to enjoin Commonwealth from taking further proceedings in Puerto Rico pending disposition of the New York action, and intended to apply that afternoon for a temporary restraining order, a procedure which complied with the admonition of Judge Lumbard in Arvida Corp. v. Sugarman, 259 F.2d 428, 429 (2 Cir. 1958). The virtue of Lummus' counsel was not rewarded; Commonwealth's Puerto Rico counsel immediately secured *ex parte* an order of the District Court there, temporarily restraining prosecution of the New York action. On July 20, after hearings, the District Court for Puerto Rico entered an "Order for Preliminary Injunction," containing extensive findings of fact and conclusions of law.[2] The Puerto Rico District Court found that "A substantial dispute has arisen and a substantial issue exists as between Commonwealth and Lummus as to whether there was fraud in the inducement of the contracts * * * which might make the consent of the parties unreal and nullify the whole contract including the arbitration clause"; that "The questions raised in the present case concerning the staying of the arbitration demanded by defendant Lummus are governed by the Arbitration Law of Puerto Rico"; and that the court had the power, in its discretion, to enjoin any further steps or proceedings by Lummus in the Southern District or before the American Arbitration Association until such questions were determined by it. An order issued so enjoining Lummus "until this Court enters its order finally determining whether there are valid and existing arbitration agreements between the parties and whether the said arbitration so demanded should be permanently stayed."

An appeal by Lummus to the First Circuit resulted in a comprehensive opinion, written by Judge Aldrich, unanimously reversing this order of the District Court for Puerto Rico. The Court of Appeals indicated that, if it felt free to apply its own views, it would hold the arbitration clause broad enough to include a claim of fraud in the inducement, as this Court had held under the Federal Arbitration Act, 9 U.S.C. §§ 1–13, in Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2 Cir.1959), cert. granted, 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, dismissed pursuant to stipulation, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960), and has decided more recently in In re Kinoshita & Co., 287 F.2d 951 (2 Cir.1961); however, the First Circuit felt bound to apply the law of New York. Taking that view, it held that a New York court would consider a claim of voidability based on fraud in the inducement of the entire contract, even though not related specifically to the agreement to arbitrate, in deciding whether to compel arbitration; however, Commonwealth had not asserted any fraud peculiar to the agreement to arbitrate and its claim of rescission of the contracts in their entirety was inconsistent with its apparent unwillingness to return any part of the consideration—moreover, its attempt at rescission was not timely. The Court concluded, 280 F.2d at 931, that "Since Commonwealth failed to raise a substantial issue as to the making or the existence of the contracts, it was not entitled to a preliminary stay of the arbitration proceedings" or to the preliminary injunction issued thereafter. The various injunctive orders were vacated and the Dis-

---

2. Certain other proceedings in the District Court for Puerto Rico, not here material, are reported in 174 F.Supp. 485 and 175 F.Supp. 873.

trict Court in Puerto Rico was directed to stay its own proceedings pending the arbitration in New York. Denial of rehearing in a further opinion [3] and denial of certiorari followed, after which the District Court for Puerto Rico took the action the First Circuit had directed.

The scene now shifts back to New York. On January 12, 1961, after a barrage of letters begun by Lummus and vigorously continued by Commonwealth, the American Arbitration Association advised it would proceed with the arbitration. A few days later Commonwealth moved in the Southern District to stay arbitration until Lummus' petition to compel it had been brought on for hearing or, in the alternative, pending a trial on issues of arbitrability. The issues proposed to be tried were fraud in the inducement of the contracts, a contention that certain of Lummus' claims did not arise under them, and the effect of the last sentence of the arbitration paragraph, relating to insurance. Lummus, evidently tiring of what had been its relatively passive role in the Federal arenas, moved to remand to the state court on numerous grounds set forth in Judge Weinfeld's opinion of June 2, 1961, 195 F.Supp. 47, denying its motion. On June 8, Judge Dawson filed a memorandum 195 F.Supp. 572, directing a trial of arbitrability. He held that this was governed by New York law and "That a substantial issue has been raised as to the making of the contract"; his memorandum did not discuss Lummus' contention that any such issue had been disposed of by the First Circuit or refer to the other issues Commonwealth had raised. After denial of a motion by Lummus for reargument or alternatively for the inclusion of a certificate pursuant to 28 U.S.C. § 1292(b), an order was entered granting Commonwealth's motion "to the extent of directing a trial of the issues concerning the making of the contracts of July 8, 1954 and March 14, 1956, and

the arbitrability of the issues in conflict between the parties, * * * and staying all proceedings in connection with the arbitration demanded * * * pending determination of the said trial."

The last steps in this procedural marathon are that Lummus has appealed from this order; that Commonwealth has moved to dismiss for lack of appellate jurisdiction; and that Lummus has petitioned for mandamus if Commonwealth's motion to dismiss be granted.

(1) *Appealability.*

■ Plainly Judge Dawson's order is not a final judgment appealable under 28 U.S.C. § 1291, as an order dismissing Lummus' petition or an order directing arbitration would have been, Farr & Co. v. Cia. Intercontinental De Navegacion De Cuba, S. A., 243 F.2d 342 (2 Cir., 1957). The only provision of § 1292 in any way pertinent is subsection (a) (1) authorizing appeal from "Interlocutory orders * * * granting * * * [or] refusing * * * injunctions." Lummus says Judge Dawson's order did both; we hold it did neither.

■ (a) The claim that the order refused an injunction rests on the premise that a petition seeking to compel arbitration is in effect a request for a mandatory injunction, cf. Red Star Laboratories Co. v. Pabst, 100 F.2d 1, 3–4 (7 Cir.1938), hence a reference to trial on the issue of arbitrability is said to be the refusal of an injunction. A contrary position was taken in Division 689 Amalgamated Ass'n, etc., v. Capital Transit Co., 97 U.S.App.D.C. 4, 227 F.2d 19 (D.C.Cir. 1955), and John Thompson Beacon Windows, Ltd. v. Ferro, Inc., 98 U.S.App. D.C. 109, 232 F.2d 366 (D.C.Cir. 1956). Although Lummus' attempt at distinction on the basis that the District of Columbia Circuit follows the rule of Morgenstern Chemical Co. v. Schering Corp., 181 F.2d 160 (3 Cir.1950), that the denial of a plaintiff's motion for summary

---

**3.** This stated, *inter alia,* " * * * now that certain issues in the case have been decided, we see no reason for the court below to remain as the court which will supervise whatever arbitration is to be had," 280 F.2d at 933.

judgment in a suit for an injunction is not a refusal of an injunction within § 1292(a) (1), rather than the contrary rule of Federal Glass Co. v. Loshin, 217 F.2d 936 (2 Cir.1954), to which we adhered in Peter Pan Fabrics, Inc. v. Dixon Textile Corp., 280 F.2d 800 (2 Cir.1960), might dispose of Division 689, it does not have that effect on John Thompson, where Judge Fahy rested decision also on the ground that "The suit was not for injunctive relief in the traditional sense, nor even for specific performance strictly speaking. It was for a unique statutory remedy." [232 F.2d 369.] We agree with that reasoning; we cannot believe that when Congress adopted the Federal Arbitration Act to facilitate what was thought to be a speedy method for determining controversies, it considered that orders directing or refusing to direct a trial of arbitrability, under 9 U.S.C. § 4, would be appealable under 28 U.S.C. § 1292(a) (1) as the denial or grant of a mandatory injunction to arbitrate; and if it did not intend orders granting or denying motions for such a trial under the Federal Act to be thus appealable, it hardly meant that a similar order in any other proceeding to compel arbitration should be.

(b) The second ground urged for appealability is that the order staying arbitration is the grant of an injunction, as an order staying a proceeding in another court would clearly be, Cray, McFawn & Co. v. Hegarty, Conroy & Co., 85 F.2d 516 (2 Cir.1936); Tyrill v. Alcoa SS. Co., 266 F.2d 27 (2 Cir.1959).

Commonwealth's first gambit against this is Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955), which held that a district court's refusal to enter a stay of an accounting action in that court, pending arbitration, was not a refusal of an injunction within § 1292(a) (1). Lummus answers that the order there sought to be appealed related to a stay of the court's own proceeding, in equity, which was unappealable under City of Morgantown, W. Va. v. Royal Ins. Co., 337 U.S. 254, 69 S.Ct. 1067, 93 L.Ed. 1347 (1949), cf.

Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935) and Ettelson v. Metropolitan Life Ins. Co., 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942), rather than the stay of an arbitration which is said to be a separate and independent proceeding. To this Commonwealth rejoins with our decisions in Armstrong-Norwalk Rubber Corp. v. Local Union No. 283, etc., 269 F.2d 618 (2 Cir.1959), and Greenstein v. National Skirt & Sportswear Ass'n, Inc., 274 F.2d 430 (2 Cir.1960).

Armstrong-Norwalk was an action seeking a declaratory judgment that plaintiff was under no duty to arbitrate and an injunction against arbitration; the order formally under appeal was a stay of the action pending arbitration. Since the stay was in an action that would have been equitable, the case might thus be viewed as not differing from Baltimore Contractors or this court's own previous decision in Wilson Bros. v. Textile Workers Union, 224 F.2d 176 (2 Cir.), cert. denied, 350 U.S. 834, 76 S.Ct. 70, 100 L. Ed. 745 (1955). However, the appellant in Armstrong-Norwalk had moved for a preliminary injunction against arbitration, 269 F.2d at 619, and the stay would seem to constitute a refusal of that; therefore, although the opinion does not discuss this basis of appealability, the decision implies that a refusal to stay an arbitration is not a refusal of what § 1292(a) (1) means by "injunction." In any event Greenstein squarely held that a refusal to stay arbitration, in an action brought for that sole purpose, was not the refusal of an interlocutory "injunction" within § 1292(a) (1).

■ Although we cannot deny that the issue implicitly determined in Armstrong-Norwalk and explicitly decided in Greenstein was not identical with that in Baltimore Contractors, these cases correctly applied the principle there established. The Supreme Court said in Baltimore Contractors, 348 U.S. at 181, 75 S. Ct. at 252, that the provisions of § 1292 (a) (1) with respect to injunctions sprang "from a developing need to permit litigants to effectually challenge in-

terlocutory orders of serious, perhaps irreparable, consequence." An order staying or refusing to stay an arbitration pending judicial inquiry into arbitrability does not rise to that level; the only prejudice from the former is a possibly needless trial of the preliminary issue and from the latter an arbitration that may be held void when the time comes for confirmation of the award.[4] Unpleasant as such consequences may be, they scarcely seem to have been what Congress had in mind when it established what is now 28 U.S.C. § 1292(a) (1) as an exception to the general rule of finality in Federal appellate procedure. This is especially so in view of the baneful effect that permitting appeals from orders refusing stays would have upon the speed which is one of the supposed advantages of arbitration. Yet, if an order refusing a stay of arbitration is not a refusal of an "injunction" within § 1292(a) (1), an order granting such a stay cannot well be the grant of an "injunction" within that section. Despite the Supreme Court's disapproval, in Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 202, 76 S. Ct. 273, 100 L.Ed. 199 (1956), of Judge Learned Hand's statement in Murray Oil Products Co. v. Mitsui & Co., 146 F.2d 381, 383 (2 Cir. 1944), that "arbitration is merely a form of trial, to be adopted in the action itself, in place of the trial at common law", it remains undeniable that arbitration differs from a proceeding in another court in the essential respect that the arbitration cannot produce an enforceable result without further judicial action. We said in Grant v. United States, 282 F.2d 165, 170 (2 Cir.1960), "that not every request for an order containing words of restraint is one for an injunction within § 1292(a) (1)"; here also we reject a broad literal interpretation of "injunction" because of what we conceive to have been the narrower purpose of Congress.

### (2) Mandamus.

■■ In the light of La Buy v. Howes Leather Co., 352 U.S. 249, 254, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), Commonwealth properly does not challenge our power to issue a writ of mandamus that would reach the District Judge's order; it does challenge the propriety of our exercising the power. We recognize that, as stated in La Buy, p. 260, 77 S.Ct. p. 315, the power should be used only in "exceptional circumstances," since to do otherwise would frustrate the basic Federal policy against piecemeal appeals. Hence delay of arbitration through direction of a possibly needless trial of arbitrability *in limine* would not normally

---

4. Lummus has argued against this that, under § 1458 of the New York Civil Practice Act, enacted in 1937, N.Y.Laws c. 341, a party who has participated in the selection of the arbitrators or in any of the proceedings before them may not thereafter "put in issue the making of the contract or submission or the failure to comply therewith" if he has "made or been served with an application to compel arbitration" under § 1450. However, this New York provision exists in a setting wherein an order directing arbitration or refusing a stay is appealable as a final order, Civil Practice Act, § 1467; Matter of Hosiery Manufacturers Corp. v. Goldston, 238 N.Y. 22, 143 N.E. 779 (1924); Matter of Paloma Frocks, Inc. v. Shamokin Sportswear Corp., 2 N.Y.2d 782, 158 N.Y.S.2d 327, 139 N.E.2d 425 (1956); the New York legislature thought one such full opportunity to test out arbitrability was enough. If uniformity in the application of 28 U.S.C. § 1292(a) (1) in this area of orders concerning arbitration can be obtained only by holding § 1458 of the New York Civil Practice Act inapplicable, under the rules of decision statute, 28 U.S.C. § 1652, in an arbitration proceeding in the Federal courts, even though the contract not be within §§ 1 and 2 of the Federal Act, we think that, despite Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 76 S.Ct. 273 (1956), the rules of decision statute should be so construed —such a construction being constitutional on the basis that § 1458 is "procedural" or at least lies in the "twilight zone," Iovino v. Waterson, 274 F.2d 41, 47–48 (2 Cir. 1959), cert. denied Carlin v. Iovino, 362 U.S. 949, 80 S.Ct. 860, 4 L.Ed.2d 867 (1960). In any event, under Robert Lawrence Co. v. Devonshire Fabrics, Inc., supra, § 1458 would be inapplicable in the Federal courts when, as appears to be the case here, the contract is within the Federal Act.

suffice to warrant the issuance of mandamus. See In re Union Leader Corp., 292 F.2d 381, 384 (1 Cir.1961). We need not decide whether the fact that the delay in this case has already lasted for some thirty months would alone constitute an "exceptional circumstance." Here Lummus asserts the District Judge has directed reexamination of an issue that has been conclusively determined in its favor by another Court of Appeals. The right not to have to relitigate an issue so determined is as much entitled to extraordinary protection as the right to jury trial, Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed. 2d 988 (1959), the right to trial before an unbiased judge, United States v. Ritter, 273 F.2d 30, 32 (10 Cir.1959), cert. denied, 362 U.S. 950, 80 S.Ct. 863, 4 L. Ed.2d 869 (1960), In re Union Leader Corp., supra, or the right to trial directly by a judge rather than initially by a master, La Buy v. Howes Leather Co., supra. Accordingly we think the case appropriate for mandamus if Lummus' assertion is made out, as we find it to be.

(3) *Jurisdiction of the District Court.*

■■ Before proceeding further we must consider whether Lummus was right in its claim, overruled by Judge Weinfeld, that the District Court lacked jurisdiction. For, even though no appeal from the order refusing a remand was or could have been taken, "An appellate federal court must satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review." Mitchell v. Maurer, 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934). The principal ground for remand asserted by Lummus was that the decision of a divided Court in National Mutual Ins. Co. v. Tidewater Transfer Co., 337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949), upholding Federal jurisdiction in an action between a citizen of the District of Columbia and a citizen of a state, is inapplicable to a suit between a citizen of Puerto Rico and a citizen of Delaware. Happily we can limit ourselves to saying that this and other contentions are sufficiently disposed of by Judge Weinfeld's thorough opinion, 195 F.Supp. 47 (S.D.N.Y.1961), denying Lummus' motion.[5]

(4) *Conclusiveness of the First Circuit decision with respect to fraud in the inducement.*

The First Circuit decision plainly is not conclusive with respect to Commonwealth's contention concerning the effect of the final sentence of the arbitration

---

5. We would go further and adopt Judge Weinfeld's opinion as our own save only that we think we ought reserve complete liberty on various unsettled questions, suggested in Part II of that opinion and in footnotes 4 and 7 of this one, as to the "procedural" and "substantive" law governing proceedings in the Federal courts to compel or prevent arbitration, and the border-line between them. Four situations suggest themselves: (A), Proceeding begun in Federal court—contract not within Federal Act; (B), Proceeding removed to Federal court—contract not within Federal Act; (C), Proceeding begun in Federal court—contract within Federal Act; (D), Proceeding removed to Federal court—contract within Federal Act. Each of these situations may involve some questions that are "substantive" and others that are "procedural." Several of these eight squares have been occupied—subject to the ever present problem of determining the substantive-procedural boundary. Bernhardt teaches that state "substantive" law of arbitrability applies in (A); the same would surely be true of (B). Robert Lawrence teaches, so far as this Court can, that Federal "substantive" law of arbitrability governs in (C), and this should likewise be true of (D). Federal "procedural" law clearly governs (A) and (C). We do not mean this listing of original and removed proceedings as separate categories to indicate any view on our part that different rules should apply; counsel occasionally seem to think so and we leave the matter open. Perhaps, in view of Robert Lawrence, we ought add to the list (E), Proceeding remaining in state court —contract within Federal Act, but that will not be our responsibility to decide.

Judge Weinfeld's conclusion that Puerto Rico's status as a "commonwealth," 48 U.S.C.A. §§ 731b–731e, also 66 Stat. 327 (1952), has not caused it to cease to be a "territory," is now further buttressed by United States v. De Jesus, 289 F.2d 37, 40 (2 Cir.1961).

88

clause, relating to insurance, since the Court stated it had "not decided" that issue, 280 F.2d at 933, fn.; and we reserve for later consideration the effect of its decision on the contention that certain of Lummus' claims fall outside the arbitration clause. We deal now with the conclusiveness of the decision on Commonwealth's plea of non-arbitrability because of fraud in the inducement.

The District Court for Puerto Rico had issued its injunction against the arbitration and the New York proceeding to compel arbitration because the Court had found, in the language of the Puerto Rican statute, "that a substantial dispute has arisen as regards the validity or existence of the arbitration agreement * * *." [6] The First Circuit decision held that "Commonwealth failed to raise a substantial issue as to the making or the existence of the contracts." If arbitrability in the instant proceeding is governed by the New York arbitration act, the question is whether Commonwealth has set forth "evidentiary facts * * * raising a substantial issue as to the making of the contract," N.Y. Civil Practice Act, § 1450; if the Federal act governs, the question is whether the court is "satisfied that the making of the agreement for arbitration * * * is not in issue," 9 U.S.C. § 4. Quite evidently, despite minor language differences, the question under either statute [7] is the same as the question the First Circuit decided and the Supreme Court declined to review. Why, then, should the issue be open to further litigation?

Commonwealth's first answer is that the issue would have remained open in the District Court for Puerto Rico if the Court of Appeals had not directed that court to stay its proceedings, and therefore must be so here. If the premise were sound, the conclusion would follow. It is not. Commonwealth relies on the Court's statement, in denying its petition for rehearing, 280 F.2d at 933, "The stay that we indicated is not the equivalent of the stay which would be entered upon a motion for a stay of the action under an arbitration statute. Such a stay would indeed settle all questions of arbitrability." What this means to us is that, in contrast to what would have happened if the Court of Appeals had directed arbitration and stayed all actions in the meanwhile, the First Circuit decision did not foreclose all issues of arbitrability, notably that in regard to insurance; we do not think Judge Aldrich meant that, but for the stay of its own proceedings, the District Court for Puerto Rico would have been free to disregard the Court of Appeals' conclusion, to the formulation of which that Court had "devoted a sizable portion of the past several months," 280 F.2d at 932, that "Commonwealth failed to raise a substantial issue as to the making or the existence of the contracts," id. at 931, and to give Commonwealth another chance. In denying Commonwealth's petition for rehearing the Court of Appeals rejected new factual material as too late; it is scarcely likely that the Court intended to allow the District Court to accept what it had rejected.

6. 32 Laws of Puerto Rico (Ann.) § 3204 (2). Subsection (4) says that "In order to give rise to [such] a dispute * * *, the party concerned shall state the proved facts on which said dispute is founded."

7. Bernhardt v. Polygraphic Co., supra, held that "the 'agreement in writing' for arbitration referred to in § 3 [of the Federal Act] is the kind of agreement which §§ 1 and 2 have brought under federal regulation," 350 U.S. at p. 201, 76 S.Ct. at p. 275; and that hence in an action for breach of a contract not within §§ 1 and 2, in which Federal jurisdiction rested on diverse citizenship, a Federal court should not grant a stay of the action pending arbitration if one would not be granted by the courts of the state where the Federal court sat. Under that decision, we should suppose that the state formulation of the issue would apply here if the contract was not within §§ 1 and 2 of the Federal Act; conversely that, under Robert Lawrence Co. v. Devonshire Fabrics, Inc., supra, the federal formulation would apply if it were. However, we here perceive no significant difference between the two.

Commonwealth's second answer is that the First Circuit decision was "interlocutory." It seeks to bring itself within the rule that action with respect to a temporary injunction, whether by a trial court or an appellate court, ordinarily is not "binding on the trial court nor upon either of the parties in considering and determining the merits of the controversy," Benson Hotel Corp. v. Woods, 168 F.2d 694, 697 (8 Cir. 1948); Walker Memorial Baptist Church, Inc. v. Saunders, 285 N.Y. 462, 474, 35 N.E. 42, 47 (1941), and the principle that conclusiveness generally attaches only to "final" judgments, American Law Institute, Restatement of Judgments, § 41; 2 Freeman, Judgments (5 ed. 1925), p. 1406. However, to borrow Mr. Justice Brandeis' famous phrase, "final" also is "a word of many meanings," Southwestern Bell Telephone Co. v. Public Service Comm'n, 262 U.S. 276, 310, 43 S.Ct. 544, 554, 67 A.L.R. 981 (1923); the law of judgments does not use it in relation to conclusiveness, as 28 U.S.C. § 1291 does, to mean only a judgment "which ends the litigation * * and leaves nothing for the court to do but execute the judgment," Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945).

■ In New York the view that certain determinations on motions may be conclusive as to matters actually litigated goes back as far as Dwight v. St. John, 25 N.Y. 203 (1862) and Riggs v. Pursell, 74 N.Y. 370 (1878). The Supreme Court of Kansas noted long ago, in a much cited opinion, "a growing disposition to enlarge the scope of the doctrine of *res judicata*, and to place more regard on the substance of the decision than on the form of the proceedings," Board of County Commissioners v. McIntosh, 30 Kan. 234, 238, 1 Pac. 572, 575 (1883). That disposition has continued to grow, see 2 Freeman, Judgments (5 ed. 1925), § 668, citing many cases, of which Lake v. Bonynge, 161 Cal. 120, 118 Pac. 535 (1911); Truesdale v. Farmers' Loan & Trust Co., 67 Minn. 454, 70 N.W. 568 (1897); and Burner v. Hevener, 34 W. Va. 774, 12 S.E. 861 (1891), are especial-

ly pertinent, and, more recently, such cases as First National Bank & Trust Co. of Vermilion v. Kirby, 62 S.D. 489, 253 N.W. 616 (1934); Schuman v. Sternberg, 179 Okl. 118, 65 P.2d 413 (1937); and Darlington v. Basalt Rock Co., Cal.App., 10 Cal.Rptr. 556 (D.Ct. App.1961). New York has held that an order directing arbitration, Matter of Marchant v. Mead-Morrison Manufacturing Co., 252 N.Y. 284, 169 N.E. 386 (1929), and an order refusing a stay of arbitration, Reo Garment, Inc. v. Jason Corp., 6 A.D.2d 401, 178 N.Y.S.2d 368 (1st Dept.1958), aff'd mem. 6 N.Y.2d 725, 185 N.Y.S.2d 812, 158 N.E.2d 505 (1959), are *res judicata*. To be sure, New York deems such orders "final" as that term is used in the appeal provisions of the Civil Practice Act, see footnote 3, but we do not think the Marchant or Reo decisions would have differed if the orders, though not "final" in that sense, were nevertheless appealable as "non-final" orders, and certainly not if they had been appealed. Whether a judgment, not "final" in the sense of 28 U.S.C. § 1291, ought nevertheless be considered "final" in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i. e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. "Finality" in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.

■ The First Circuit decision satisfies all these determinants. We have already settled that the decision was not intended to be tentative. The Puerto Rican statute, like those of New York and the United States, affords a party challenging a demand for arbitration an opportunity for a trial as to the existence of an agreement to arbitrate, upon his first satisfying the court that a genuine issue exists. The response to such a challenge from the party seeking arbitration is like a motion for a summary judgment that no showing of such an issue

has been made. In the typical case in the Federal courts, a determination by the district court in such a controversy would not be appealable, and conclusiveness might well be denied on that ground until an appealable judgment had been rendered, cf. American Law Institute, Restatement of Judgments, § 69(2). Here, however, the order of the District Court of Puerto Rico determining that a sufficient showing had been made was appealable (since it enjoined the New York action), and was appealed. Under such circumstances we see no reason why a decision that the party opposing arbitration has made no showing of a genuine issue as to the existence of an agreement to arbitrate should be less conclusive than are similar determinations under F.R.Civ. Proc. 56, 28 U.S.C. Indeed, for reasons previously indicated, the general policy of preventing relitigation applies with peculiar force to issues preliminary to arbitration. Of course, it is of no moment whether our own analysis as to fraud in the inducement would coincide with the First Circuit's.[8]

(5) *The scope of decision on the petition for mandamus.*

■ The foregoing leads to the conclusion that we must direct a vacating of the order insofar as it permits a trial of the defense to arbitration based on fraud in the inducement. Assuming for present purposes that the conclusiveness of the First Circuit decision is confined to that issue, we must now decide whether we should so limit our decision or should also pass upon the other issues of arbitrability, to the full extent the record will permit, although we might not have considered mandamus if they had stood alone.

We believe we may lawfully pursue either course, but that on the special facts of this case we ought follow the latter. Nearly two and a half years have elapsed since Lummus demanded arbitration. We see no purpose in a trial of the other claims advanced against arbitrability, when all material needed for their disposition is before us, and, in our view, any determination in Commonwealth's favor by the District Court would ultimately have to be reversed as erroneous in law.

(6) *Commonwealth's contention that certain of Lummus' claims do not arise out of or relate to the contracts.*

Although under the previous point we assumed that the First Circuit's decision was not conclusive on the contention here considered, this is not altogether clear. In its principal opinion the Court of Appeals said, 280 F.2d 931:

"Commonwealth has not contended that Lummus' claim does not constitute an arbitrable issue within the broad provisions of the clause here in question. We believe that this question, if there could be one, is therefore foreclosed to it."

And on rehearing the court said, 280 F.2d 933, fn.:

"It seems late for Commonwealth to suggest that the general scope of the arbitration clause was not before the court."

If the case had come before the Court of Appeals on an answer by Commonwealth to a petition of Lummus for arbitration, we should suppose the decision would have been conclusive not only on issues of arbitrability that were raised but on others that could have been, as the Court intimated. However, that was not the posture in which the case was presented, and the authorities discussed above suggest that the conclusive effect of the order may therefore be limited to the issues that Commonwealth actually tendered in support of its prayer for an injunction against the New York arbitration and court proceedings.

■ We find it unnecessary to determine this, since scrutiny of Commonwealth's contentions demonstrates that,

---

8. We add for clarity that we do not hold any determination by the First Circuit with respect to fraud, rescission, etc. to be conclusive save on the limited issue of arbitrability.

even if open, they are without foundation in law. They deal with bills of Lummus for material or services which were furnished generally in connection with the work but which Commonwealth says were not in fact furnished pursuant to the basic contracts. Lummus admits that certain of these claims are based on supplemental agreements, but points out that § 22.1 of the contracts contemplated such supplementation. The broad arbitration clause allows arbitration of any "controversy or claim arising out of or relating to this Agreement"; both federal and New York decisions require a conclusion that the claims in question were sufficiently related to the original contracts that arbitration may proceed. United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 567–569, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); Matter of Lipman v. Haeuser Shellac Co., 289 N.Y. 76, 80, 43 N.E.2d 817, 819, 142 A.L.R. 1088 (1942); Matter of Exercycle Corp. v. Maratta, 9 N.Y. 2d 329, 337, 214 N.Y.S.2d 353, 358, 174 N.E.2d 463, 466–467 (1961); Matter of Spectrum Fabrics Corp. v. Main St. Fashions, Inc., 285 App.Div. 710, 139 N.Y.S.2d 612 (1st Dept.), aff'd mem., 309 N.Y. 709, 128 N.E.2d 416 (1955); Matter of Transpacific Transport Corp. v. Sirena Shipping Co., 9 A.D.2d 316, 321, 193 N.Y.S.2d 277, 283 (1st Dept. 1959), aff'd mem., 8 N.Y.2d 1048, 207 N.Y.S.2d 70, 170 N.E.2d 391 (1960).

### (7) *The "insurance" exception.*

We come finally to Commonwealth's assertion that a triable issue with respect to arbitration exists because of the last sentence of the arbitration paragraph: "It is agreed, however, that this Agreement shall not apply to claims or damages for which either party has contracts of insurance protecting their respective interests."

Article 12 of the 1954 contract, entitled "Insurance Coverage," requires that "During the performance of the work covered by this Agreement and until the Plant is accepted in accordance with this Agreement and until all of Contractor's and Subcontractors' personnel and property have left the Job Site," the Contractor (Lummus) shall carry various types of insurance. These include Workmen's Compensation Insurance (including Employer's Liability Insurance); Comprehensive General Liability Insurance (bodily injuries and property damage); Automobile Public Liability and Property Damage Insurance (covering "all owned and non-owned vehicles furnished by Contractor"); Excess Liability Insurance covering Employer's Liability, Automobile Liability and General Liability ("This insurance to include the interest of the Purchaser, the Contractor and all Subcontractors, and to apply to occurrences happening anywhere in the world. The policy, terms, conditions and exclusions shall be subject to the approval of the Purchaser."); All Risk Transportation and Installation Insurance ("direct loss or damage to property of Contractor, Purchaser and Subcontractor"); Ocean Marine Cargo Insurance; Broad Form Payroll Insurance; and Broad Form Monies and Securities Insurance. Under § 12.10, policies were to be endorsed to require insurers to notify both Purchaser and Contractor of any cancellation; and "All the insurance under this Article 12.0 where permissible by law shall be written to cover the interest of Purchaser and Contractor as these may appear."

Article 12 of the 1956 contract differs but slightly. The provision as to Excess Liability Insurance was omitted, and a new section was added that: "Purchaser shall provide in all insurance carried by it for damages to or loss of use of its property that such insurance is without right of subrogation against Contractor or its subsidiaries." On September 18, 1956, two modifications in Article 12 of the 1956 contract were made. An Excess Liability Insurance provision was added, similar to the 1954 provision, except that the interests to be included were only those "of the Contractor and all Subcontractors"; the provision in Article 12.10, "All insurance under this Article 12.0,

where permissible by law, shall be written to cover the interest of Purchaser and Contractor as they may appear," was eliminated.

Lummus asserts and Commonwealth does not deny that the final sentence of the arbitration paragraph stemmed from the following circumstance: On January 12, 1953, the Appellate Division for the Second Department decided Madawick Contracting Co., Inc. v. Travelers Ins. Co., 281 App.Div. 754, 118 N.Y.S.2d 115 (1953). The case concerned an insurer which had agreed to pay all sums the insured subcontractor "shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property" and to defend "any suit against the insured alleging such injury or destruction and seeking damages on account thereof." The decision was that "the policy did not require appellant [insurer] to defend plaintiff [insured] in an arbitration proceeding nor obligate it to pay any award entered against plaintiff in such a proceeding."

Marsh & McLennan, Incorporated, who were insurance brokers for both Lummus and Commonwealth, circularized their clients as to the Madawick decision. Their memorandum began by noting that although "Arbitration contracts have appeared in construction contracts for many years," only "Rarely, has the arbitration clause been brought into issues involving bodily injury or property damage claims covered by Contractors Liability Insurance." After summarizing the decision, the memorandum stated "that, if your Company includes in contracts with others arbitration clauses which are broad enough to apply to claims for damages that would normally fall under Public Liability insurance, following the above decision, there probably is no coverage under such insurance for arbitration proceedings," and recommended that, for the time being, "it would seem wise if you must accept arbitration clauses, to have them exclude situations which would normally fall under insurance." The final sentence of the arbitration paragraph, drafted in the light of this suggestion, was included in the contract of July 8, 1954, and also in the contract of March 14, 1956, although the New York Court of Appeals had reversed Madawick on May 27, 1954, 307 N.Y. 111, 120 N.E.2d 520.[9]

Commonwealth contends the final sentence excludes or limits arbitration because of two circumstances: It says that although Lummus has averred that Lummus "has no contracts of insurance which provide any coverage with respect to the amounts due Lummus from Commonwealth under their contract and which are the subject of Lummus' claim," Lummus has not denied the carriage of insurance against claims for misfeasance such as Commonwealth is making. Moreover, Commonwealth asserts it has insurance against some of the losses it seeks to recover against Lummus; although it does not amplify this, the suggestion seems to be that this may come within the policy of the final sentence, at least as to the 1954 contract, since submitting Commonwealth's claims to arbitration might be offensive to the insurer as subrogee.

If Lummus had limited its notice of arbitration to the outstanding bills of $4,697,797.85, Commonwealth's claim would be plainly untenable since Lummus swears it has no insurance protecting it against loss of these amounts and Commonwealth does not suggest the contrary; the controversy as to the effect of the final sentence thus relates solely to Lummus' inclusion of a demand for "a determination of any set-offs or counterclaims against the undersigned which Commonwealth may assert." Even as to this, we consider Commonwealth's contention unfounded as a matter of law. The final sentence of the arbitration paragraph was surely not intended to render nugatory all that preceded; yet, on Commonwealth's interpretation, either

9. Since some law other than New York's might govern the liability of an insurer to the parties, the reversal of the Appellate Division's decision did not necessarily destroy the basis that had underlain insertion of the final sentence.

party, by obtaining insurance to protect its interests, could at any time block the other's road to arbitration. Lord Bacon's Maxim, reg. 10, "All words, whether they be in deeds, or statutes, or otherwise, if they be general, and not express and precise, shall be restrained unto the fitness of the matter and the person," which Judge Van Voorhis quoted in Madawick, is equally pertinent here. See also Mantell v. International Plastic Harmonica Corp., 141 N.J.Eq. 379, 55 A.2d 250, 173 A.L.R. 1185 (1947); Sternbergh v. Fehling, 396 Pa. 280, 152 A.2d 473 (1959); and other cases cited in 3 Corbin, Contracts, § 549. In order to afford a sensible interpretation of the paragraph as a whole, the final sentence must be confined to what we know to have been its purpose, "claims for damages that would normally fall under Public Liability insurance" called for by Article 12.

Commonwealth asserts that such a reading would deprive the final sentence of effect, since both it and Lummus were to be named in the Article 12 insurance under the 1954 contract, and also under the 1956 contract until its amendment, and neither would have reason to demand arbitration of a claim the insurer was bound to pay. Apart from the fact that Commonwealth was to be included as an insured only "where permissible by law," the argument ignores that the insurance was insurance against liability. Thus, inclusion of Commonwealth in Lummus' property damage insurance meant that Commonwealth as well as Lummus was protected against liability as to claims for damage to the property of others, not that the insurer was bound to pay Commonwealth for damage to Commonwealth's own property caused by Lum-

mus; as to this the insurer was bound to pay Lummus if the latter was found liable to Commonwealth, and the final sentence enabled Lummus to insist that any such liability be determined otherwise than by arbitration and thus avoid the problem that had confronted the Madawick Company until the New York Court of Appeals set matters right. And even as to third party claims, circumstances might exist, including the obvious although possibly remote one of a claim exceeding the insurance coverage, where one party might find it necessary or desirable to proceed against the other. It may be that the office our construction leaves the final sentence is a small one; we prefer that to a reading that would allow an exception, ineptly worded to meet a particular problem, to swallow the rule. We hold that "contracts of insurance" as used in the final sentence of paragraph 25.1 means contracts of insurance procured pursuant to paragraph 12. Commonwealth does not assert that any of the claims sought to be arbitrated are so covered.

Commonwealth thus having failed to raise any issue of arbitrability warranting a trial, the District Court's order directing one and staying arbitration pending its determination should be vacated. The order being interlocutory and thus still under the control of the District Judge, we assume no further action on our part is required. Since Commonwealth is the prevailing party on the appeal but nominally is not a party to the petition for mandamus, we think it best that costs in the instant proceedings abide the ultimate outcome.

Appeal dismissed for lack of appellate jurisdiction; petition for mandamus granted.