In the Matter of the Arbitration between SPECTRUM FABRICS CORPORATION, Appellant, and MAIN STREET FASHIONS, INC., Respondent.

First Department, April 12, 1955.

*Bernard A. Saslow* of counsel (*Harold A. Axel* with him on the brief; *Lynton & Saslow,* attorneys), for appellant.

*Robert W. Adler* of counsel (*Ruben Schwartz,* attorney), for respondent.

RABIN, J.   The petitioner agreed to sell to respondent and respondent agreed to buy 5,000 yards of fabric of a pattern designated as " Scottie ".   Most of the goods ordered were delivered.   A dispute has arisen between the parties, the buyer claiming that the seller failed to restrict that pattern to it

exclusively as, it alleges, the seller was bound to do under its agreement. The seller denies that under the contract between the parties it was under any obligation to do so. It is that dispute which the buyer seeks to arbitrate under the arbitration clause that both parties agree is contained in the contract. The seller resists arbitration, asserting that there is no arbitrable dispute between the parties for the contract is clear and unambiguous and does not contain any such exclusive privilege claimed by the buyer. Accordingly, the seller petitioned Special Term to stay the proposed arbitration. From the refusal of Special Term to grant such relief, the petitioner appeals.

The first writing to be considered is the one dated April 15, 1954, on the printed form of the seller. It is the original order of the buyer and contains the following clause: " Confined to coat and Rainwear. Cloth is released only if no further orders received by June 30."

It is upon this clause that the buyer rests his claim. This order form is signed by the president of the buyer and also by the representative or salesman of the seller. However, on its face there is printed the following legend: " This order is subject to the acceptance of Spectrum Fabrics Corporation and to the conditions appearing on the face and reverse side hereof." On the reverse side, we find printed the following: " 10. Acceptance. This instrument shall become a contract when signed by Buyer and Accepted by Seller."

The second writing to be considered is likewise one on the printed form of the seller and is dated the day following the signing of the order, i.e., April 16, 1954. It is entitled " CONTRACT " and printed on the face thereof is the following provision: " The order, the subject of this contract, has been accepted and recorded by the seller at its office in New York. This contract, (the provisions on both this and the reverse side of this sheet) supersedes the buyer's own form of manifold or order, if any, and constitutes the only contract between buyer and seller covering this transaction. There are no oral understandings, representations or agreements relative to this contract that are not fully expressed herein, and this contract shall not be modified or amended except in writing."

The seller claims that this document constitutes the sole contract between the parties, is silent as to any exclusive privilege and, in the light of the above provision, one may not read into it the confinement clause found in the order of April 15th. Therefore, urges the seller, it appears clearly that there is no obligation on the part of the seller to confine the Scottie fabric to the

buyer and thus no arbitrable issue exists between the parties. Is that position sound? Is it so clear, beyond real dispute, that the second document replaces and removes the first from consideration, as seller contends, rather than incorporates it by reference, as buyer contends, that a court can say there is no issue, no room for dispute, hence nothing for arbitrators to resolve?

True, the paper of April 16th would expressly supersede any order on the buyer's own form. But the order of April 15th is not on the buyer's form but rather on the form of the seller. True, under the April 16th agreement there may not be any " oral understandings " and " agreements ". But the order of April 15th is in writing. Can it be said that it is clear and beyond question that the intention and effect of the contract of the parties is to be gleaned only from the later document?

The last-quoted clause of that document makes the reverse side of the document part of the contract and gives it the same force as though it were printed on its face. In paragraph 7 printed on the reverse side, we find the following: " If Seller agrees to confine any of the goods sold herewith, it shall be responsible only for ordinary and reasonable care in confining such goods to the specified purpose."

The instrument must be considered as a whole and every part of it must be given a meaning. We can get some help in determining whether the seller agreed " to confine any of the goods sold herewith " by reading it with the following appearing on the face of the document: " The order, the subject of this contract, has been accepted and recorded by the seller at its office in New York."

Why does this clause recite acceptance of the order and why does it recite that the order has been recorded in the seller's office? The answer to that question may appear in clause 10 on the reverse side of the order of April 15th, which is as follows: " 10. Acceptance: This instrument shall become a contract when signed by Buyer and Accepted by Seller."

For us to say that no arbitrable dispute exists here would require a finding that the position of the buyer is " clearly contrary to the plain meaning of the words " and " beyond dispute " (*Matter of International Assn. of Machinists [Cutler-Hammer, Inc.]*, 271 App. Div. 917, 918, affd. 297 N. Y. 519), and it must likewise be found that there has been no default " under the unambiguous terms of an agreement calling for arbitration " (*Matter of General Elec. Co. [United Elec. Radio & Mach. Workers of Amer., C. I. O.]*, 300 N. Y. 262, 264). No such finding can be made here.

Clearly there is presented a real dispute. As a court, determining the issue of construction, we might readily agree with the seller. But the question before us is not how we would decide the issue but whether there is any issue to decide. If there be an issue to decide, and we should hold that there is, then the arbitrators must decide it.

It is contended, however, that because the determination of the question raised requires an adjudication as to what constitutes the contract of the parties, that determination must be left to the courts. Understandably, where there is a controversy as to whether a contract exists requiring the parties to arbitrate their differences that issue must be decided by the court. There can be no arbitration unless it is first found that the parties have agreed to arbitrate. But here we have such an agreement and there is a real dispute under it. That dispute, particularly under the circumstances of this case should be determined by the arbitrators and not by the courts. Not only does each document contain a broad arbitration clause but by the contract of April 16th, which makes specific reference to the order of April 15th, the parties agree to arbitrate not only any controversy arising under the contract but any controversy in relation thereto. Both questions of fact and law are for the arbitrators (*Matter of Lipman* [*Haeuser Shellac Co.*], 289 N. Y. 76).

When parties agree to arbitrate, they agree to waive the rules of evidence and the inexorable application of substantive rules as well. This may not always be wise, but it is within the powers of the contracting parties, and it is the import and essence of an arbitration agreement. It distorts the purpose of arbitration for courts to censor the issues that arbitrators may consider before the courts will permit an arbitration to proceed. The statute is clear in confining the court's function to determining (1) the existence of an agreement or submission to arbitrate, and (2) the existence of an issue referable to the agreement (Civ. Prac. Act, §§ 1450, 1458). Surely, the parties in this case could have executed a submission to arbitrate the question whether the accepted order form was embraced in the more formal agreement signed the next day. If they could do that, they could also sign an agreement to arbitrate a similar dispute should it arise in the future. The fact is that an agreement to arbitrate, as authorized by statute, is a contractual method for settling disputes in which the parties create their own forums, pick their own judges, waive all but limited rights of review or appeal, dispense with the rules of evidence, and leave the issues

to be determined in accordance with the sense of justice and equity that they may believe reposes in the breasts and minds of their self-chosen judges. All this they choose for themselves, subject only to the statutory grounds for vacatur of the award, as set forth in section 1462 of the Civil Practice Act. This violates no policy. The statute authorizes it. Its wisdom is not for the courts to dispute.

The order appealed from should be affirmed.

CALLAHAN, J. (dissenting). The question on this appeal is whether there has been a refusal to arbitrate a dispute that is arbitrable under the terms of a contract between the parties.

It is my view that the dispute sought to be arbitrated was not arbitrable under any established contract. I am also in disagreement with the majority as to when the function of the court ends and that of the arbitrators begins in determining the existence of the right to arbitration in the present circumstances.

The buyer of certain fabric, after delivery of the goods, served notice that he desired to arbitrate a claim for damages based on the seller's alleged failure to confine the particular fabric and pattern to the buyer. The seller moved to stay the arbitration on the ground that there was no agreement for an exclusive privilege or confinement of the goods to the buyer.

In the course of negotiating the sale, three written documents passed between the parties. Only the first of these refers to confining the pattern. The nub of the dispute is whether that provision survived or was expunged in view of the form and content of the second document, and whether the court or the arbitrators should decide that question.

The first paper was prepared by the seller's salesman on a form supplied by the seller. It was an " ORDER " for 5,000 yards of " Scottie " fabric on specified terms, including " Confined to coat and Rainwear."

On the motion to stay the arbitration, the seller's salesman swears that the negotiations or discussion leading to the order aforesaid took place at the buyer's place of business, and that the buyer wrote the confinement restriction on the order despite the salesman's admonition that he did not know whether his employer would agree to such provision. The " ORDER " also provided that it was not to be effective until accepted by the seller.

The salesman asserts that when he called the attention of his employer to the confinement clause, his employer refused to grant such privilege to the buyer, and thereupon the salesman notified the buyer of its rejection.

The second document was prepared by the seller and transmitted to the buyer. This paper was labeled a " CONTRACT " and numbered 2801. It had all the indicia of a formal contract, and in boldface type provided as follows: " The order, the subject of this contract, has been accepted and recorded by the seller at its office in New York. This contract, (the provisions on both this and the reverse side of this sheet) supersedes the buyer's own form of manifold or order, if any, and constitutes the only contract between buyer and seller covering this transaction. There are no oral understandings, representations or agreements relative to this contract that are not fully expressed herein, and this contract shall not be modified or amended except in writing." This document contained no reference to confinement of the pattern. On the other hand, it set forth new terms of sale, not mentioned in the original order blank, such as a color schedule, that delivery was to be made by truck, that the price was to be f.o.b. a designated city, and for automatic billing. At the bottom of this " CONTRACT " separated by a perforated line was a slip reading as follows: " PLEASE TEAR OFF, SIGN AND RETURN * * * We * * * hereby acknowledge receipt of contract No. 2801 dated 4/16/54 and find same correct in every respect." The buyer signed and returned this slip to the seller.

The seller contends, and I am in agreement with its view, that the second document when accepted by the buyer's execution and return of the slip acknowledging receipt and approval of " contract No. 2801 " was an integration of the agreement between the parties superseding any provision of the original " ORDER ", but not found in the " CONTRACT ", and that, therefore, no agreement existed for confinement of the " Scottie " fabric. The buyer, on the other hand, claims that the confinement clause of the " ORDER " survived because of the wording of the acceptance clause in the " CONTRACT ".

The majority opinion points out that certain provisions of the so-called " CONTRACT " are somewhat equivocal. They are best understood, however, when we consider that the parties were using printed forms. This court apparently considers that an ambiguity is created by reason of the phraseology of the " CONTRACT " paper, and that fact questions are raised as to whether the confinement clause of the " ORDER " was intended to survive. Because both documents contain arbitration clauses, the majority appears to be of the view that the arbitrators are to decide those questions of fact. This procedure amounts to a

surrender to arbitrators of functions and duties which the law has placed upon the court.

In the first place, the acceptance clause of the " CONTRACT " document is susceptible of only one construction, viz., that any acceptance of the " ORDER " was qualified or conditional. Among the conditions imposed was that the said paper was to be the only contract between the parties. This much seems clear, and it is set forth in unequivocal language of independent and emphasized clauses, even though there are other clauses referring to a buyer's form of manifold or order and a provision for exclusion of " oral " statements or understandings of the parties.

If I am wrong in my view that the intention to merge or integrate the contract into the second document is so clear that it can be decided as matter of law upon the papers before us, there is at least a fact issue raised in connection with that question. The decision of this factual question is also for the court under the provisions of section 1450 of the Civil Practice Act, and not for the arbitrators. This statute requires the court to determine not only the existence of an agreement to arbitrate, but a refusal to comply with a demand for arbitration. A refusal to comply, of course, means improper refusal, and, therefore, the court must determine whether the dispute offered for arbitration is referable to an existing contract that calls for arbitration of the precise controversy. (*Matter of Riverdale Fabrics Corp.* [*Tillinghast-Stiles Co.*], 306 N. Y. 288, 291.) There can be no arbitrable dispute concerning damages for failure to afford an exclusive privilege to the buyer in the use of the " Scottie " fabric in this case, unless a contract is established to the court's satisfaction containing a covenant out of which such a claim might arise. The mere assertion by a party to an agreement containing an arbitration clause that there is an arbitrable dispute as to the meaning or application of a contract is not enough (*Matter of International Assn. of Machinists* [*Cutler-Hammer, Inc.*], 271 App. Div. 917, affd. 297 N. Y. 519; *Matter of Brookside Mills* [*Raybrook Textile Corp.*], 276 App. Div. 357).

The existence of an arbitrable dispute is not dependent upon the construction to be given to an ambiguous term or provision of an established contract. If it were, I would agree that it was a matter for the arbitrators to resolve the ambiguity and construe the meaning of any disputed or doubtful covenant in the agreement of the parties. Here, however, the question is whether the contract as finally made between the parties contained any agreement for confinement of the " Scottie " fabric

to the buyer in the manufacture of " coat and Rainwear." This requires the court to decide whether the confinement clause of the " ORDER " was superseded, or did it survive the buyer's indication of approval of the " CONTRACT " document omitting such provision as " correct in every respect." This is a question that goes to the formation of the contract between the parties — what is their agreement — and does not involve the construction of a contract already established or found to exist. Such an inquiry into the formation or existence of a contract and its terms is for the court alone. If the issue here were whether an arbitration clause had survived from the first document or " ORDER ", it is clear that the court would have to decide that issue. The case is no different simply because the covenant or term, which is the subject of inquiry, is one for confinement or exclusive privilege in the use of the goods rather than one providing for arbitration itself. It is just as much the court's function to find the existence of an arbitrable dispute referable to a proved contract as it is its duty to find that a contractual right to arbitrate exists in the first place.

The important point is that the court decides all questions relating to the formation and terms of a contract in accordance with the general rules of contract law. It is improper to allow arbitrators to decide such matters in accordance with their notions of the law. This would permit the arbitrators to make the contract or agreement for the parties. Whether in this case the first writing or " ORDER " was merely an offer and the second document or " CONTRACT " a counter-offer or qualified acceptance, as well as the effect of the merger clause in the latter paper, must be determined by the court in accordance with the provisions of the law of contracts in general. These matters relate to the existence of a contract to arbitrate and its terms, so as to enable the court to determine whether an arbitrable dispute exists between the parties and that one of them has wrongfully refused to comply with the other's demand for arbitration of the same. To repeat, all this is for the court in the first instance, whether or not it involves questions of fact.

I dissent, and vote to reverse the order appealed from and grant the motion for a stay of arbitration.

PECK, P. J., BREITEL and BOTEIN, JJ., concur with RABIN, J.; CALLAHAN, J., dissents and votes to reverse, in opinion.

Order affirmed, with $20 costs and disbursements to the respondent.