In the Matter of the Arbitration between Transpacific Transport Corp., Respondent, and Sirena Shipping Company, S. A., Appellant.

First Department, November 24, 1959.

*Sheldon A. Vogel* of counsel (*John G. deRoos* with him on the brief; *Bingham, Englar, Jones & Houston,* attorneys), for appellant.

*Raymond J. Burke* of counsel (*Thomas A. Dillon, Jr.,* with him on the brief; *Nelson, Healy, Baillie & Burke,* attorneys), for respondent.

BREITEL, J. P. The buyer, Transpacific, brought this proceeding to compel the seller, Sirena, to submit to arbitration the dispute which has arisen between them as to alleged breaches by the seller of a written agreement to sell a vessel. The buyer claimed breaches of warranty and misrepresentations as to the condition of the vessel. In accordance with the broad arbitration clause contained in the agreement, Special Term granted the motion to compel the seller to submit to arbitration.

The order should be affirmed, the parties having agreed that " [a]ll disputes and differences arising out of this Agreement shall be settled by arbitration in the City of New York."

The bone of contention is that the buyer in its demand for arbitration would require the seller to retake possession of the vessel and pay expenses incurred to date, or, in the alternative, to pay the difference between the contract price of the vessel and the market value on the date of the tender, plus certain other expenses.

The seller, in resisting arbitration, points to the undisputed fact that the vessel was delivered to and accepted by the buyer.

The seller claims that the buyer had knowledge of the alleged breach of warranty at the time of the acceptance (which is disputed), and argues that the buyer would therefore not be entitled to rescind under either the law of Nova Scotia or New York. On this basis, the seller asserts that the arbitration may not lie because there is not a controversy " which may be the subject of an action " (Civ. Prac. Act, § 1448).

The seller's contention is easily resolved. It is now well-settled law that there may be remedies in arbitration which would not have been available in a court within conventional actions or proceedings at law or in equity. It is not required that the mode or the quantum of the relief available be the same (*Matter of Staklinski* [*Pyramid Elec. Co.*], 6 N Y 2d 159, affg. 6 A D 2d 565, especially p. 570; *Matter of Ruppert* [*Egelhofer*], 3 N Y 2d 576, 581). As a consequence, the seller confuses the concept of a dispute " which may be the subject of an action ". It is enough that the dispute is of a nature which is cognizable in an action in a court (*Matter of Kallus* [*Ideal Novelty & Toy Co.*], 292 N. Y. 459; *Matter of Friedland*, 1 A D 2d 129, 131).

The seller's reliance on *Matter of Burkin* (*Katz*) (1 N Y 2d 570) is misplaced. The question there was whether the removal of a director of a corporation for misconduct could be " the subject of an action " within the meaning of section 1448 of the Civil Practice Act. The certificates of incorporation of the two corporations involved expressly required unanimity among the stockholders as a condition of removal, and the directors therefore lacked power to enter into an enforcible arbitration clause with respect to the matter. On this analysis, it was held that an arbitration clause in a contract between the directors could not be the vehicle for accomplishing the removal of a director for misconduct. The case is distinguishable on its facts, as well as in principle.

It has also been contended that, although an arbitrable dispute is present, the court should initially delineate the area of the arbitrable controversy because, under the sales agreement, an award predicated on the market value of the vessel would be unjust. In effect, the contention is that, under the agreement, there can be no genuine dispute that the only appropriate measure of damages for the alleged breach of warranty is the cost of repairs required to put the vessel into the condition specified by the contract.

The resolution of this contention requires reference to the written agreement of sale and to some of the events which occurred under it. As already noted, the agreement contained

a broad arbitration clause covering any disputes arising out of the agreement. Involved was the sale of a used vessel, a so-called "Restricted Liberty", of World War II construction.

Under the contract delivery could be made at the seller's option either at certain United States or Canadian ports. The buyer had the right of cancellation if the vessel was not ready for delivery, "free of any outstanding recommendations" (i.e., free of recommendations for repairs or replacements by the American Bureau of Shipping, an independent shipping service, following inspection and certification by it). The buyer waived inspection afloat, but the agreement contained no express provision regarding inspection while the vessel would be in dry dock. The agreement was also silent as to the measure of damages or a right to retender in the event of a breach.

The vessel was sent to Halifax, as permitted by the contract, but it arrived only four days before the closing. The buyer urges that it was wrongfully denied the right to inspect the interior of the vessel and that the seller prevented the buyer from so doing in order to conceal fraudulently the actual condition of the vessel. The buyer took delivery but, at the time and in writing, asserted the right of a further inspection and retender. Thereafter, the buyer claims to have discovered defects and retendered the vessel. The seller rejected the retender, asserting that under the contract the delivery and acceptance (even under protest) precluded such right. Efforts at reconciliation failed and the buyer demanded arbitration.

It suffices to say that a reading by reasonable men of the contract might result in different views as to the scope of the buyer's option to cancel, the seller's duty to effect repairs, or the consequences intended to follow should the buyer fail to cancel despite the presence of alleged defects or breach of the seller's duty to effect repairs. Moreover, even assuming that the buyer was restricted to the contractual provision for cancellation, it is not clear that the seller's alleged misconduct, after execution of the agreement and up to and including delivery of the vessel, did not enlarge upon the buyer's rights to relief. Put another way, it is not at all clear that the buyer was limited by the agreement, or by the events that occurred thereafter, to cancellation before delivery (but after inspection) for breach of warranty or misrepresentation as to the condition of the vessel.

By way of motivation the seller argues that the defects for which the buyer is claiming the right to retender the vessel are slight in amount, and that what the buyer is really trying

to do is undo a sale following a drop in the ship market. It also argues that the buyer's demand for arbitration is no more than an assertion of the right to "rescind" the sale. The question, however, on this application is not who is right, but who is to decide the question presented in the dispute — the arbitrators or the courts.

Under the broad arbitration clause in this agreement to sell, the interpretation and application of the agreement are exclusively for the arbitrators and not for the courts, once it is found that the dispute is a genuine one (*Matter of Spectrum Fabrics Corp. [Main St. Fashions]*, 285 App. Div. 710, 714, affd. 309 N. Y. 709). The Court of Appeals has expressly held "that all acts of the parties subsequent to the making of the contract which raise issues of fact or law, lie exclusively within the jurisdiction of the arbitrators" (*Matter of Lipman [Haeuser Shellac Co.]*, 289 N. Y. 76, 80).

It is not disputed that the several inspections, the delivery, the qualified acceptance, the retender, and the rejection of the retender all occurred after the making of the contract. Nor is there any doubt that the parties read the contract differently, as even do the members of this court.

Of course, it does not follow that because the buyer demands a particular mode or quantum of relief that the arbitrators will grant it. There is a litigation risk in arbitration, as there is in the courts. Nor are the courts endowed with a power of censorship of arbitration proceedings to make certain that arbitrators will resolve the facts and the issues before them in the same manner that the courts believe they would have done. Nor are the arbitrators bound to exercise their powers in the mold of the forms of action or in the tradition of the chancellor.

Indeed, one of the several purposes of arbitration is that the parties select, instead of the courts, their own "judges" and a mode of dispute determination not governed either by the rules of substantive law or the rules of evidence which obtain in the courts. (*Matter of Wenger & Co.* v. *Propper Silk Hosiery Mills*, 239 N. Y. 199, 202–203; *Matter of Spectrum Fabrics Corp. [Main St. Fashions]*, 285 App. Div. 710, affd. 309 N. Y. 709, *supra*). Whether this be wise is not for the courts to say.

Although judicial supervision of the deliberations and intermediate findings of arbitrators is not available, the provisions of a contract present to arbitrators an obligation only to interpret and apply the agreement and not to remake it. But the sanction for the performance of such obligation rests, once there is a genuine and arbitrable dispute, in the minds and breasts

of the arbitrators (*Matter of Marchant* v. *Mead-Morrison Mfg. Co.*, 252 N. Y. 284, 302; *Matter of Spectrum Fabrics Corp.* [*Main St. Fashions*], 285 App. Div. 710, affd. 309 N. Y. 709, *supra*). Only if the award, given a valid submission, exceeds their powers as arbitrators or goes beyond the matters submitted to them may there be corrective action in the courts (Civ. Prac. Act, §§ 1462, 1462-a).

*Matter of Marchant* v. *Mead-Morrison Mfg. Co.* (252 N. Y. 284, *supra*) does not hold otherwise. That case involved an older, and what is now recognized to be a narrow, arbitration clause. There the contract limited arbitration to controversy or difference of opinion " as to the construction of the terms and conditions of [the] contract, or as to its performance " (p. 290). After a hearing, the arbitrators charged the seller with consequential damages of nearly one million dollars on the ground that the effect of its delay in performance was to ruin the buyer. In the context of the case Chief Judge CARDOZO contrasted the narrow arbitration clause there involved with the broader form, then also current, which, however, is very much like the clause in this case. In affirming this court's modification of the award striking that part which related to the consequential damages, it was expressly noted that the question was not whether such damages might have been recovered, if the buyer had been suing in the courts, because the judgment of the arbitrators was not to be impeached for misconception of the law (p. 302). The point was that the arbitrators had departed from the submission, which, it was held, did not include consequential damages within its scope. Moreover, in the *Marchant* case the issue arose on the confirmation of the award and not on the demand for arbitration. The only question here, on the other hand, is whether the demand tenders a genuine dispute under and within the agreement containing the broad arbitration clause.

The demand in this case does no more than assert the right of the buyer to retender the vessel and recover the price or, in the alternative, the difference between the price and the market value on the date of tender. This involves a construction of the agreement — whether the agreement gives such rights, assuming that the buyer establishes the defects it claims exist in the vessel. It also involves a determination on the facts with relation to the claim that the buyer's inspection was frustrated or fraudulently diverted by the seller.

Whether a New York court or a Nova Scotia court would grant the relief demanded is not material. Whether a court or the law would describe such relief as " rescission " is not

material (cf. *Matter of Kahn* [*National City Bank*], 284 N. Y. 515, 523).* The only question is whether there is a genuine dispute, on the events occurring after the agreement and as to the effect of the contract clauses, referable to the agreement and the arbitration clause contained in it.

Least of all does a court have the power to penetrate the arbitration chamber in advance and direct the arbitrators how they may decide the issues otherwise validly submitted to them. Thus, cases like *Matter of Wrap-Vertiser Corp.* (*Plotnick*), (3 N Y 2d 17) and *Matter of Sarle* (*Sperry Gyroscope Co.*) (4 A D 2d 638, affd. 4 N Y 2d 917) are beside the point. In each case the demand consisted of separate items, one of which, as to a substantive issue, was held to be outside the scope of the arbitration agreement.

In the *Wrap-Vertiser* case the item held not arbitrable was one for damages in the fraudulent inducement of the contract. This was not because the item related to the mode of relief, but because the relief sought depended on conduct which preceded in time the execution of the contract. It was, therefore, held that the issue was not subject to arbitration—because the dispute was not one that arose under the agreement but related to a matter that occurred before there was an agreement. It was, in effect, an antecedent dispute, and it was held that the arbitration clause was not broad enough to cover such dispute. The court expressly said that no question was raised concerning the interpretation of the agreement or of nonperformance under it ( p. 20).

In this particular case, it begs the question to say that the arbitrators may award '' non-allowable '' damages. '' Non-allowable '' in this context means not allowable in an action at law as determined by the law of sales. Arbitrators are not so confined (*Matter of Staklinski* [*Pyramid Elec. Co.*], 6 N Y 2d 159, affg. 6 A D 2d 565, *supra*).

It is not significant in determining the question of law involved in this case, but the last sentence in the arbitration clause is interesting. It reads: '' The arbitrators shall be commercial

---

* In the *Kahn* case, it was held: "The court upon a motion to enforce provisions for arbitration has no jurisdiction to determine whether because of fraud or other dereliction on the part of one party to an agreement which contains a provision for arbitration, the other party is entitled to rescind the agreement. The court must pass upon the question whether the written contract providing for arbitration, or the submission to arbitration, was made and whether there was a failure to proceed with the *obligation to arbitrate*." True, the claimed right to rescind was in the party resisting arbitration, but the case, nevertheless, explains the threshold jurisdiction of the courts under the arbitration statutes.

men conversant with shipping matters ''. This may not be exactly comforting to the vanity of courts, but it does indicate that the parties decided, rightly or wrongly, that the justice they desired was that of their peers in the shipping business. This they have a right to do under our arbitration statutes. This is a right exercised even in ancient times (see, generally, Bouvier's Law Dictionary [Rawle's 3d ed.], Arbitration and Award). This right the court may not deny them.

Accordingly, the order granting petitioner's motion to compel respondent to proceed with arbitration should be affirmed, on the law and on the facts, with costs to petitioner-respondent.

M. M. FRANK, J. (dissenting in part). I agree that there is an arbitrable controversy concerning the cost of the repairs required to put the vessel into the condition specified in the contract, and as to any damages that Transpacific suffered because of an alleged breach of warranty, or active concealment and fraudulent misrepresentations by Sirena.

I must dissent, however, from the direction to arbitrate any other question. The arbitration clause in the agreement embraces ''[a]ll disputes and differences arising out of this agreement ''. Another provision in the agreement specifically prohibits modification unless in writing and acknowledged by both parties. The petitioner's claim of a right to tender the return of the vessel, or, in the alternative, for an award for the difference between the contract price and the reduced market price on the date of delivery should be excluded from consideration by the arbitrators.

The agreement, dated January 23, 1958, for the sale of the vessel provides that Transpacific had the option to cancel the contract if the vessel was not ready for delivery by May 31, 1958. In that event, the buyer, at its option to be exercised not later than June 1, 1958, had the right to cancel the agreement and the parties were to be mutually released. The vessel was delivered to and accepted by Transpacific on May 30, 1958. It was not until June 26, 1958 that Transpacific sought to return the vessel to Sirena. The contract does not permit the petitioner to accept delivery under protest and unilaterally to reserve its right to reject delivery thereafter or to return the vessel to the seller. A unilateral reservation which, in effect, varies the terms of the contract and attempts to expand the subject matter of any permissible controversy thereunder cannot be read into the contract. Thus the self-created claim for damages for the difference between the contract price of the vessel and the market price on the date of delivery should not be construed to be an arbitrable issue within the agreement.

The law does not require parties to arbitrate a claim which they did not intend to be arbitrable. Nor can arbitration be compelled "in order to change contract rights or liabilities." (*Matter of Essenson* [*Upper Queens Med. Group*], 307 N. Y. 68, 73, and cases cited therein.) Arbitrators do not have unfettered discretion in awarding damages. In *Matter of Marchant* v. *Mead-Morrison Mfg. Co.* (252 N. Y. 284, 300), the Court of Appeals disallowed an award of consequential damages where the arbitrators had departed from the submission and the damages allowed were not of such a nature that the arbitrators could consider them.

The instant case is analogous. There was a substantial drop in the market value of similar vessels between January (the date of the contract of purchase) and May (the date of delivery). Using that change in market value as a springboard, Transpacific seeks recovery for the difference. In the absence of a contractual arrangement therefor, the petitioner is not entitled to take advantage of the situation by holding the seller answerable for a windfall represented by the difference in value. The law does not countenance self-created prerogatives, and an award of damages predicated thereon would be unjust, unconscionable and repugnant to public policy as in the nature of a penalty. (*Matter of Publishers Assn.* [*Newspaper Union*], 280 App. Div. 500; see, also, *Matter of Wenger & Co.* v. *Propper Silk Hosiery Mills,* 239 N. Y. 199, 202; *Matter of International Assn. of Machinists* [*Cutler-Hammer, Inc.*], 271 App. Div. 917, affd. 297 N. Y. 519.) The agreement in this matter is clear and unambiguous, and the language employed by the parties does not permit of an award directing a return of the vessel or of the alternative damages demanded. (*Matter of Western Union Tel. Co.* [*Amer. Communications Assn.*], 299 N. Y. 177, 185.)

While it has been suggested that the question of whether the arbitrators may make an award exceeding the scope of the arbitration should be deferred until a motion to confirm is before the courts, justice and orderly procedure will be better served by a delineation of the area of the arbitrable controversy before the arbitrators embark upon a resolution of the issues. Sirena should not be subjected to a contention on a motion to confirm that it has waived the non-arbitrable nature of the issues under discussion by participating in the arbitration. (See Civ. Prac. Act, § 1458.) It is now appropriate for the court to exclude impermissible items from arbitration. (*Matter of Wrap-Vertiser Corp.* [*Plotnick*], 3 N Y 2d 17.)

Since an award may not be rejected by the courts for a mistake in law made by the arbitrators, it may be too late for correction if that occurs here. Moreover, if a lump-sum award is made, it may be impossible to determine whether it included non-allowable damages.

We need not reach the question as to whether the arbitrators may grant equitable relief which would include rescission for fraud, since the petitioner disclaims that it seeks that relief.

The order should therefore be modified in consonance with the views herein expressed.

VALENTE, McNALLY and STEVENS, JJ., concur with BREITEL, J. P.; M. M. FRANK, J., dissents in part and votes to modify, in opinion.

Order affirmed on the law and on the facts, with $20 costs and disbursements to the respondent, and the respondent-appellant is ordered to appoint an arbitrator within five days after service of a copy of the order entered herein, with notice of entry.