Louis B. Heller, J.
In this arbitration proceeding the Marine Engineers Beneficial Association, District No. 2, hereinafter referred to as the “ Union ”, seeks an order confirming the award of the arbitrator and directing that judgment be entered accordingly. Isbrandtsen Company, Inc., hereinafter referred to as “Isbrandtsen”, cross-moves for an order vacating the award of the arbitrator pursuant to section 1462 of the Civil Practice Act on the grounds (1) that the arbitrator and this court have no jurisdiction over the basic subject matter of the dispute, (2) that the arbitrator exceeded his powers and (3) that he imperfectly executed his powers that a final definitive award upon the subject matter submitted was not made and that it was partial and biased in favor of the Union.
The essential facts which give rise to this controversy are not in dispute and the chronology of events is as follows:
During October, 1960 Isbrandtsen purchased 26% of the stock of the American Export Lines, Inc., hereinafter referred to as “ Export ”. Immediately thereafter Isbrandtsen, which was operating a fleet of ocean-going vessels at a loss and not being in a position financially or by the nature of its other activities to qualify for an operating differential subsidy from the United States Government, entered into two agreements, one with its wholly-owned subsidiary Isbrandtsen Steamship Co., hereinafter referred to as “ Steamship ”, and the second with Export. By the terms of the agreement with its subsidiary Steamship, it sold its 14 vessels and trade routes to it in return for promissory notes secured by mortgages on the vessels. By its agreement with Export, Isbrandtsen sold its stock in its subsidiary Steamship and in turn Export guaranteed the payment of the purchase price. Both agreements were conditional, however, on Steamship and Export obtaining approval of the transactions and the granting of a subsidy to cover the operation of the 14 vessels by Export through Steamship as Export’s wholly-owned subsidiary.
In June, 1961 Union and Isbrandtsen entered into negotiations relative to the renewal of the expiring collective bargaining agreement and Union submitted a proposed new agreement containing section 13 of article I, not present in previous agreements between the parties and which is the subject and basis of the controversy between the parties. An agreement containing the disputed clause was signed by the parties on October 2, 1961, dating back, however, to September 1,1961.
The pertinent portion of section 13 provides that the agreement covered the licensed engineers employed on the vessels owned and operated by Isbrandtsen or any subsidiary or affiliate but not to include any vessel covered by an existing agreement *619 with the United States Maritime Union. The term “ subsidiary ” or “ affiliate ’’was to include any business entity, whether corporate, partnership, etc., controlled by or which controlled Isbrandtsen directly or indirectly.
On April 30, 1962 the Secretary of Commerce gave his final approval to the applications filed by Export and Steamship, granting them the differential subsidy.
On June 1,1962 Isbrandtsen, Steamship and Export completed their transactions covered by the November 1, 1960 agreements with certain variations whereby Isbrandtsen first sold its stock in Steamship to Export, Export then merged with Steamship and the vessels thereafter transferred to Export. Commencing with June 15,1962 Isbrandtsen adopted the following procedure with respect to the transfer of its vessels. Immediately prior to a transfer Isbrandtsen terminated the services of the licensed engineers and then transferred the vessel to Export. The collective bargaining agreement entered into in September, 1961 was thereafter not applied to the vessel transferred.
It is important to note that between April 30, 1962 and the time of the transfer of the vessels the Union on a number of occasions attempted to arbitrate the failure of Isbrandtsen to apply the contract in its transfers. Finally, the parties agreed to arbitrate the applicability of section 13 of article I of the agreement. However, the determination in such arbitration was to be merely advisory in nature and not to be used in any forum or be binding upon the parties. On May 14,1962 the arbitrator’s award was issued determining that section 13 of the agreement was applicable and that it required Isbrandtsen to secure the application of said agreement to the vessels after their transfer. The award was preliminary to the one under consideration by the court at this time.
When Isbrandtsen began discharging the licensed engineers and transferring the ships, the Union applied for arbitration pursuant to the terms of its contract and on August 6, 1962 Mr. Justice Carney, Supreme Court, New York County, directed arbitration and denied Isbrandtsen’s request for a stay. The company appealed from this decision and applied to the Appellate Division for a stay pending such appeal, which was denied. (17 A D 2d 721.) The matter then proceeded to arbitration and the arbitrator designated by the collective bargaining agreement made the following determination and award: that Isbrandtsen violated section 13 of the collective bargaining agreement by failing to continue to apply the agreement to the vessels transferred and by terminating the employment of the engineers, depriving them of their wages and other benefits; *620 that the collective bargaining agreement was in force and effect and fully applicable to all of the vessels during the life of the agreement. Isbrandtsen was then directed to apply or secure the application of the collective bargaining agreement until its expiration date to the vessels transferred; reinstate the discharged employees without loss of rights and seniority and to compensate them for loss of earnings. Other directives affecting the Union’s rights were also made.
Before proceeding with the merits of the respective motions, the preliminary issue of jurisdiction raised by Isbrandtsen, i.e., whether the controversy lies within the exclusive primary province of the National Labor Relations Board, thereby pre-empting the right of the court and the arbitrator to make any determination, must be disposed of. The basis of such objection to jurisdiction is the contention of Isbrandtsen that the heart of the matter involves conflicting claims as to the right of representation between the Union having its contract with Isbrandtsen and a rival union known as the Brotherhood of Marine Officers, who had a contract with Export, for the employment of the licensed engineers of the 14 transferred vessels.
In support of its contention of lack of jurisdiction, Isbrandtsen has cited authorities standing for the principle that the National Labor Relations Board has exclusive jurisdiction over matters relating to employee representation. While the court is in agreement with the principle of law so expressed, it finds that the authorities cited are clearly inapposite in their facts and distinguishable in law and have no application to the facts presented in the grievance raised. There is at this time no dispute between the rival labor unions as to the right of representation nor is jurisdiction sought over any additional group of employees. There is no National Labor Relations Board proceeding pending relating to this controversy nor is any secondary picketing involved. What the Union is seeking is an enforcement of a valid and binding agreement requiring the company to secure and insure the continuance of the jobs of employees it already represents. (Matter of Local 459, Int. Union of Elec. Radio & Mach. Workers [Remington Rand], 21 Misc 2d 221, affd. 11 A D 2d 657.) In any event it would appear that having failed to raise such issue on the motion to stay arbitration and on the cross motion to compel arbitration, which it so strenuously opposed, it waived such right.
Before discussing the issues, certain principles affecting arbitration must be recalled. Parties are free to select in advance the tribunal before which any disputes arising shall be heard. *621 Where it is agreed that arbitration is the method chosen, questions of law and fact are for the arbitrators. (Matter of Lipman [Haeuser Shellac Co.], 289 N. Y. 76; Matter of Spectrum Fabrics Corp. [Main St. Fashions], 285 App. Div. 710, affd. 309 N. Y. 709.)
The arbitrator’s determination as to the law and facts is conclusive unless there is some violation of the provisions of sections 1462 and 1462-a of the Civil Practice Act. Errors of judgment as to the law and facts will not warrant setting aside the award. Arbitrators are not required to follow fixed rules of law and if they do not exceed their jurisdiction, the award will not be set aside where no fraud, corruption or perverse misconstruction is established. (Matter of Wilkins, 169 N. Y. 494, 496; Matter of Dembitzer [Gutchen], 3 A D 2d 211; Matter of French Textiles Co. [Senor], 7 A D 2d 896; Matter of S & W Fine Foods [Office Employees Int. Union], 8 A D 2d 130, affd. 7 N Y 2d 1018; Matter of Garnett [Kassover], 8 A D 2d 631.)
When the parties executed their collective bargaining agreement they were fully aware of the agreements executed in November, 1960 between Isbrandtsen, Export and Steamship. The parties were also fully aware of the stock interest purchased by Isbrandtsen in Export. The arbitrator could have been charged with ignoring the essential problem in the matter if section 13 was to be interpreted without giving the surrounding circumstances the weight that they deserved.
While the express terms of an agreement cannot be amended or altered by an arbitrator, a collective bargaining agreement must be construed to carry out the intent of the parties. As the court stated in Steel Workers v. Warrior & Gulf Co. (363 U. S. 574, 581-582): “ The labor arbitrator’s source of law is not confined to the express provisions of the contract, as the industrial common law — the practice of the industry and the shop — is equally a part of the collective bargaining agreement although not expressed in it. The labor arbitrator is usually chosen because of the parties’ * * * trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. ’ ’
The only reasonable assumption that one can draw and so found by the arbitrator is that section 13 was incorporated into the agreement, for the first time to meet the situation confronting and known to the parties. Many important and basic rights, i.e., recognition, seniority and pension were made part of the agreement and were definitely meant to remain in force and effect until the expiration of the term of the contract and not to be *622 unilaterally terminated or wiped out, by the transfer of the vessels to Export.
Section 13 must be interpreted in the light of the obvious known facts to the parties. The participation of Export and the stock interest of Isbrandtsen in Export had a crucial bearing on whether the collective bargaining agreement was to continue or lapse. The apparent purpose and intent of section 13 and its insertion into the agreement for the first time was apparently to insure and protect the Union in the prospective transfer of the vessels to a company in which Isbrandtsen had a substantial interest.
The arbitrator’s construction and interpretation of section 13 in the light of the circumstances leading up to and culminating in the consummation of the agreements was not such a determination as to be characterized as a perverse misconstruction. To be so labeled, it ‘1 must be more than an egregious error of law before it satisfies the statute; it must be one which is so divorced from rationality that it can be accounted for only by one of the kinds of misbehavior recited in the statute.” (Matter of S & W Fine Foods [Office Employees Int. Union], 8 A D 2d 130, 132, supra; Matter of Campe Corp. [Pacific Mills], 275 App. Div. 634.) The record is lacking such proof.
Nor did the arbitrator exceed his authority by granting an award of specific performance of the contract, which as alleged is impossible of performance. The determination of the arbitrator that Isbrandtsen had sufficient control to apply or secure the application of the terms of the contract leads to the conclusion that specific performance of the agreement was a proper remedy. It has been held that the granting of such relief lies within the scope of an arbitrator’s powers (Matter of Grayson-Robinson Stores, 8 N Y 2d 133.) In an analogous and comparable situation, the court in Matter of Lorenz-Schneider Co. [Int. Brotherhood of Teamsters] (N. Y. L. J., April 25, 1961, p. 16, col. 5, Margett, J., affd. 14 A D 2d 923, motion for leave to appeal denied 11 N Y 2d 646) affirmed an award of an arbitrator directing specific performance of a contract even though the company there involved had sold its routes to others and no longer had control.
While the court is aware of the possibility that specific performance may not be practicable, Isbrandtsen cannot be heard to complain as the arbitrator provided for alternative relief in the form of damages during the term of the contract. Isbrandtsen has it within its powers to enter into the necessary financial arrangements with Export which would result in its compliance with the award and the fact that it may be costly cannot be a *623 reason for vacating the award. It had the obligation to consider its potential liability on such transfers and the award should not be frustrated because of the consequences of its own acts.
It is the court’s view that the company has failed to sufficiently establish the essential elements necessary for a vacatur of the award in conformity with sections 1462 and 1462-a of the Civil Practice Act and under the circumstances the judgment of this court should not be substituted for that of the arbitrator freely chosen by the parties to settle the controversy.
Motion to confirm the award is granted and the cross motion to vacate denied.