Samuel H. Hoestadteb,, J.
The court reaches the conclusion here stated with the utmost reluctance, for it permits an anomaly —- confirmation of an award of severance pay to licensed ship engineers who have remained continuously and still are in the employ of the very steamship line which under the award must give them the ‘ ‘ severance pay. ’ ’
The petitioner, Grace Line, Inc. (Grace Line), moves to vacate and the respondent National Marine Engineers’ Beneficial Association (MEBA), a union, representing licensed marine engineers, moves to confirm the award of an arbitrator, granting severance pay to 10 engineers employed on two of Grace Line’s ships.
On June 20, 1958, Committee for Companies and Agents, the collective bargaining agent for Grace Line and others in the industry, entered into a collective bargaining agreement with MEBA, made retroactive to June 16, 1958. The agreement provided that certain issues should be negotiated and that if agreement was not reached on any one of them by August 1,1958, either party should have the right to have the same submitted to arbitration. Among the issues so left open was that of a severance pay program, arbitration of which was provided for as follows:
(e) The issue of incorporating into the agreement a clause embodying the general principle that some severance allowance should be made in the ease of an engineer who has permanently lost his position by reason of the transfer or sale of his vessel to foreign registry. If this issue is submitted to arbitration, the arbitrator shall consider first whether a severance pay program is suitable and practical for the industry and if in the affirmative then he shall determine the basic provisions for a suitable and practical severance pay plan which shall have as one factor the length of continuous service of the employee affected.
The parties did not reach agreement on this issue, and it was accordingly submitted to Mitchell M. Shipman, the arbitrator named in the collective bargaining agreement. His award made on July 9, 1959, and known as the Shipman award, laid down the terms of the severance pay program, which thus became part of the 1958 collective bargaining agreement. So far as here material, it reads:
The Arbitrator does hereby determine and award that:
(1) A severance pay program is suitable and practical for the licensed engineers covered by the collective bargaining agreements between the Union and the respective Companies.
(2) The terms and conditions of the severance pay program shall be as follows:
Whenever a Company transfers a vessel to foreign registry, it shall give severance pay to the regular licensed engineers assigned to such vessel.
*911 A transfer of a vessel shall include any disposition thereof regardless of whether (a) it occurs when the vessel is in active operation or in a laid-up status; and (b) is made directly by the Company or by the Company in an affiliate or subsidiary, which, in turn, makes the disposition to foreign registry.
The regular licensed engineers entitled to severance pay shall be the full complement of licensed engineers permanently assigned to the vessel at the time of its last regular full voyage preceding the transfer, regardless of whether they were actually working on the vessel during said voyage.
This Award shall be effective as of the date hereof but shall apply to any transfer or sale of any vessel to foreign registry subsequent to the commencement of this arbitration proceeding.
The disputed claim for severance pay, upheld in the award here challenged, arises out of the decommissioning of two obsolete vessels of the Grace Line, the S. S. Santa Paula and the S. S. Santa Rosa and their later transfer to foreign registry. The S. S. Santa Paula was decommissioned on June 11, 1958, the S. S. Santa Rosa on October 8,1958, and each vessel remained in laid-up status from the date of decommissioning until her transfer to foreign registry in April and July of 1961. The two old vessels so laid-up and eventually sold to a Greek steamship corporation were, however, replaced by new vessels of the same name. The new Santa Rosa was commissioned and placed in service on June 12,1958, and the new Santa Paula on October 9, 1958. Thus, each of the two obsolete vessels when laid-up was immediately replaced by the new vessel which entered into active service.
The old S. S. Santa Paula and S. S. Santa Rosa were each manned by five licensed engineers; each of the new vessels employs 12, so that the replacement by the new ships has created 14 new jobs. While the old ships were in laid-up status the Grace Line employed licensed engineers, members of MEBA, aboard each and made contributions on their behalf, to the union’s pension and welfare plan and its vacation plan, as required by the collective bargaining agreement. Each of the regular licensed engineers assigned to the old S. S. Santa Paula and S. S. Santa Rosa has been employed by the Grace Line without interruption ever since the vessel on which he served was put in laid-up status.
MEBA, however, asserted that since the two old vessels had in 1961 been sold and transferred to foreign registry, the engineers theretofore assigned to them were entitled to severance pay under the Shipman award. On Grace Line’s refusal to make payment, the parties submitted their dispute to Donald F. Shaughnessy, the permanent arbitrator under the new 1961 collective bargaining agreement between the committee and *912 MEBA. His award, dated October 3, 1962, allowing the severance pay so claimed, is attacked by Grace Line as utterly irrational, contrary to the intent of the parties, and a perverse misconstruction of their agreement. Grace Line insists that an award so devoid of reason constitutes an excess of power and the type of misbehavior which justifies vacating it.
The court has already expressed its own want of sympathy with the award so denounced by Grace Line. However, as we shall see, the question whether the award should be confirmed or not does not hinge on the court’s concurrence with the arbitrator’s decision.
Before taking up Grace Line’s main contention, it is desirable to dispose of a subsidiary argument advanced by Grace Line — that because the old S. S. Santa Paula had been withdrawn from service and her engineers transferred to the replacement vessel before the 1958 collective bargaining agreement took effect and both vessels had been so withdrawn before the July 9, 1959, Shipman award, retroactive to November, 1958, the time of the commencement of the arbitration proceeding, the Shipman award cannot rationally apply to these vessels. I find this argument completely without substance. It is answered most persuasively in the Shaughnessy award, which points out that, while these two ships were in laid-up status, licensed engineers were employed aboard them and contributions made to various union plans on their behalf, and that Grace Line, besides giving continuing consideration to their possible reactivation, agreed with MEBA as a condition of the latter’s ratification of the new collective bargaining agreement effective June 16, 1961, to consider the S. S. Santa Rosa and the S. S. Santa Paula within the terms of the Shipman award, subject to its right to offer any defense against the claims for severance pay. It is significant that the new 1961 agreement incorporates the Shipman award as one of its provisions.
The Shaughnessy award rests on the prior Shipman award. The thrust of Grace Line’s attack on the Shaughnessy award is that the severance pay program was, as its very name implies, intended to compensate for the loss of jobs or job opportunities and that here, not alone were the engineers who under the award are to receive severance pay, in the uninterrupted employ of the line, but job opportunities were increased, not diminished, through the replacement with the two new vessels, employing 14 more engineers: Grace Line urges that under the Shipman award two factors must concur to support a claim for severance pay: (1) loss of employment or job opportunity, and (2) transfer *913 to foreign registry, and that if either is absent there is no tenable basis for the allowance of severance pay.
It cannot be gainsaid that the loss of employment was an important, if not a prime, consideration in the formulation of the severance pay system for this industry. The provision in the June 16, 1958 collective bargaining agreement for arbitration of the issue has the quoted reference to “ an engineer who has permanently lost his position by reason of the transfer or sale of his vessel to foreign registry.” The Shipman opinion, as distinguished from the award proper, has like references at various points to permanent loss of position, decreasing job opportunities and displaced employees. Yet, the award itself, already quoted, declares flatly and unequivocally, that whenever “ a Company transfers a vessel to foreign registry, it shall give severance pay to the regular licensed engineers assigned to such vessel.” It makes no exceptions; it imposes no conditions. So arbitrator Shaughnessy read and applied it to the dispute submitted to him. It is manifest from his opinion that he was fully aware that the two new vessels provided the licensed engineers with more job opportunities than were lost by the sale and transfer of the old ones and that the engineers employed on the latter were not displaced, but remained in Grace Line’s employ. He pointedly commented: “It may well be that under such circumstances severance pay would not be granted if the issue were being submitted for arbitration as one of first impression.” It was his view, however, that the Shipman award constrained him to find as he did; his duty, he said, was to apply, not to amend or alter the Shipman award.
If arbitrator Shaughnessy’s interpretation of the Shipman award stands, as I conclude it must, then Grace Line’s grievance is in reality directed against the Shipman rather than the Shaughnessy award. Yet the committee accepted the Shipman award without question. Not alone did it not subject the award to judicial review, but it affirmatively ratified it when, as above noted, it embodied it in the 1961 collective bargaining agreement.
The doctrine that an award concludes the parties on all the issues, both of fact and of law, submitted to the arbitrator is now firmly established. (Matter of Spectrum Fabrics Corp. [Main St. Fashions], 285 App. Div. 710, affd. 309 N. Y. 709; Matter of S & W Fine Foods [Office Employees Int. Union], 8 AD 2d 130, affd. 7 N Y 2d 1018; Matter of Transpacific Transp. Corp. [Sirena Shipping Co., S. A.], 9 A D 2d 316, 320-321, affd. 8 N Y 2d 1048; Matter of National Cash Register Co. [Wilson], 8 N Y 2d 377.)
*914 Perhaps the arbitrator read the Shipman award too literally; possibly another arbitrator might, in construing it, have given more weight to the opinion which preceded it and, as a result, have found that the claim for severance pay was contrary to what the parties intended and that the language of the Shipman award in such circumstances did not forbid rejection of the claim. But an award may not be set aside because others might have reached a different conclusion. As Judge Ftjld said in Matter of National Cash Register Co. (Wilson) (supra, pp. 383-384): ‘ ‘ The mere fact that a different construction could have been accorded the provisions concerned and a different conclusion reached does not mean that the arbitrators so misread those provisions as to empower a court to set aside the award. It appears clear to us that the agreement between the Company and the Union is reasonably susceptible of the construction given it by the arbitrators. Accordingly, since they acted within their powers and are not chargeable with such misconduct as is specified in section 1462 of the Civil Practice Act, the award is unassailable and, disappointing though it may be to one of the parties, must be obeyed.”
The rule declared in the foregoing authorities now has statutory sanction by virtue of the declaration in section 1448-a of the Civil Practice Act, effective April 9, 1962, and hence applicable to the present arbitration, that the court “ shall not consider whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute.”
Though the court, therefore, may not disturb the award, it cannot withhold voicing its profound regret that MEBA has pressed the demand for severance pay. Allowance of severance pay where, not alone has there been no loss of either jobs or job opportunities, but new jobs have come into being through the entry into service of the new S. S. Santa Paula and S. S. Santa Rosa, runs counter to one’s sense of fairness. The award renders a disservice to the cause of both arbitration and collective bargaining. The satisfaction MEBA may take in the temporary advantage it has gained should be tempered by recognition that such seeming victories are bound in the end to be self-defeating.
The motion to vacate is denied and the motion to confirm the award is granted.