Jack Stanislaw, J.
In July of 1959 petitioner Wenger and respondent Temple Emanu-El entered into a building contract, Wenger to perform as general contractor. There was an arbitration clause in this contract (art. 40) and by June, 1963 it had become the focal point of the agreement. Several disputes arose between the parties which they attempted to resolve privately and informally at first. When these efforts failed the temple served its demand for arbitration on September 3, 1963. It asked arbitration of its claim of $50,000 against both petitioner and the architects who were also a party to the building agreement.
Following a trial of the issue of the timeliness of the demand, first raised by Wenger’s application for a stay, Mr. Justice Cohalan upheld the demand (May 21, 1964). Petitioner then served its notice of appeal and obtained a further stay of arbitration pending that appeal. Meanwhile, Wenger also sued to recover over $20,000 due it on notes respondent had delivered as part of the aborted June, 1963 settlement discussions and agreement. This court granted Wenger summary judgment. At this point the parties had maneuvered to something of a stand-off, and once more they negotiated privately to relieve the stalemate and conclude their differences.
*190 Agreement was reached August 19, 1964. Wenger was paid $7,500 11 on account ’ ’ and in turn agreed to submit its rights on the notes to arbitration. The arbitration was then to proceed, the stay was vacated, the appeal withdrawn, and the action on the notes discontinued before entry of judgment.
The dispute began to erupt anew when, on February 11, 1965, respondent for the first time requested permission of the arbitrators to increase the amount of its demand to over $290,000. A bit concerned, Wenger inquired whether the added amount was, as the initial claim, asserted jointly or only against the architects, In amplification of the substance of the amendment respondent served a bill of particulars on August 5, 1965. Although the disputed items were elaborated the arbitration still remained ostensibly against both Wenger and the architects. Again petitioner sought to clearly establish its own position, and this time the temple admitted that it was not really sure how the increase might apply to Wenger. Finally, on September 20, the temple conceded that its claim, as increased, was still being asserted against both “because it seems to us that they are both involved, and we could find no way of dividing liability as between them.”
Three grounds for this motion to stay arbitration are spelled out by Wenger. (That relating to timeliness is not affected by factors present in this court’s memorandum determination of January 31, 1966 in the parallel proceeding, Matter of Davis, Brody & Wisniewski [the architects] [Temple Emanu-El], 49 Misc 2d 251.) Briefly, these are 1) the demand to arbitrate the “ excess ” claims (over $50,000) was not timely; 2) there is no valid agreement to arbitrate as to this excess; and 3) the temple is equitably estopped from a present magnification of its first claim against Wenger by reason of the circumstances of August, 1963 agreement.
The main contract requires a demand for arbitration no later than the time of final payment. But in the June 14, 1963 agreement Wenger expressly agreed that arbitration might nevertheless be commenced 60 weeks from then notwithstanding the contractual limitation. This validly established a binding new limitation of time (Matter of River Brand Rice Mills v. Latrobe Brewing Co., 305 N. Y. 36) as the decision on the initial motion for a stay pointed out. The extended time ended August 8, 1964. Notably, the parties have not seriously questioned the validity of the underlying agreement to arbitrate disputes such as are reflected in the claim and the amended claim (cf. Matter of Diesel Constr. Co. [Haskel Constr.], 36 Misc 2d 1091). Rather, they are here at odds over an issue of the proper classification *191 of that new matter. Petitioner’s position is that it amounts to and actually is a new claim, thus clearly untimely, and respondent sees it as merely an amendment of an existing timely demand.
The general judicial inclination has apparently been one of refraining from involvement in matters in or for arbitration. Although this is a broad statement the trend is unmistakable (A-l Camp Chair Serv. Co. v. Crow Constr. Co., 24 A D 2d 623; Royal Hair Pin Corp. v. Rieser Co., 15 A D 2d 539; Matter of Kellogg Co. v. Monsanto Chem. Co., 9 A D 2d 744), including specifically as to questions of estoppel (Matter of Flatbush Med. Group v. Ittelson, 15 A D 2d 675), Problems related to separate and independent contracts (Matter of Binkow [Brichman], 1 A D 2d 906), or separate and independent actions at law to rescind agreements providing for arbitration induced by fraud (Milton L. Ehrlich, Inc. v. Swiss Constr. Corp., 21 Misc 2d 506, mod. 11 A D 2d 644) are essentially outside the framework of the proposition. In any event, the precise line at which the courts will go no further has been difficult to fix and remains unclear (cf. Matter of Exercycle Corp. [Maratta], 9 N Y 2d 329; Matter of De Laurentiis [Cinematografica], 9 N Y 2d 503; Matter of Spectrum Fabrics Corp. [Main St. Fashions], 285 App. Div. 710, affd. 309 N. Y. 709).
When these parties agreed, on August 19, 1964, to expedite the resolution of their difficulties they did so then against the background of a $50,000 claim then in" arbitration and the just expired, extended limitation period. When the temple portrays the increase in its claim as a mere procedural device, the validity of which should be resolved by arbitrators, it necessarily ignores some of the pertinent terms of the August writing. There, for instance, Wenger gave up its ability to question by appeal the, decision validating the timeliness of the original demand. The respective equities are obvious, and the procedural pigeonhole is not so easily available.
Although we have noted the probability that estoppel is referable to the arbitration proceedings (Matter of Flatbush Med. Group [Ittelson], supra), and that rescission of a contract providing for arbitration may be the basis for a separate action at law alleging a cause of action founded upon fraudulent inducement (Milton L. Ehrlich, Inc. v. Swiss Constr. Corp., supra), none of this has practical value to Wenger. This is its motion for a stay, pursuant to CPLR 7503 (subd. [b]). Denial of the motion is synonymous with commencement of arbitration (and at the higher figure). The futility of presently suggesting an action at law to rescind is self-evident. And even to assume *192 an estoppel in the arbitration we must first close our eyes to the certainty that Wenger has irretrievably relinquished a substantial substantive right to test by appeal the arbitration proceeding altogether.
It is not necessary that we assume the August 19, 1964 agreement to have been affected by an intentional withholding of a known further claim, or even simply a bilateral but mistaken understanding that the limits of arbitration had been fixed. As to this latter consideration arbitration is not limited thusly in any event (Matter of De Laurentiis [Cinematografica], supra). The point is that, attributing the purest of motives to both parties, petitioner is about to be smothered in a procedural quagmire it might otherwise have stepped over or around. The fact of a misunderstanding, however innocent or even unilateral, carries us to the heart of the matter. This court is not bound by respondent’s characterization and delineation of procedural matters. Of course, the temple’s position is at least nominally reasonable. Nevertheless, factors peculiarly relevant to the prevailing circumstances cast this “ procedural ” device in some doubt as just that. We are addressing ourselves to an amendment (so identified), established as to petitioner at least one year after the time to assert a further new claim against it had expired, and some five times greater than the initial amount claimed a year before. Any attempt to now add this kite to its tail already in flight must be viewed as at least presumptively as open to an inquiry into its proper status.
Pursuant to CPLR 7502 (subd. [b]) and CPLR 7503 (subd. [a]) the court will try the issue of the timeliness of the proposed increase of claim. We do not abdicate our limited responsibility to determine timeliness alone merely because there is a preliminary need for information relating to the exact nature of the increase as either merely an amendment, or as a substantive new and therefore untimely claim. This preliminary information would be principally a matter of the time and “timeliness” of respondent’s acquiring the data reflected in the increase.