■ In the Matter of WE'RE ASSOCIATES COMPANY, Appellant. CHEMICAL BANK, Respondent.—In a proceeding pursuant to CPLR article 75 to stay an arbitration between the petitioner landlord and the respondent tenant concerning an allegedly defective roof of the leased premises, the petitioner appeals from an order of the Supreme Court, Nassau County (Levitt, J.), entered March 2, 1989, which denied its motion to stay arbitration of an amended demand for arbitration dated December 22, 1988, entitled "Change of Claim In Respect of Demand for Damages".

Ordered, that the order is reversed, on the law, with costs, the motion is granted, arbitration of the demand dated December 22, 1988, is stayed, and the parties are directed to proceed to arbitration with respect to the respondent's original demand for arbitration dated December 1, 1987; and it is further,

Ordered that the order of the Supreme Court, Nassau County, dated April 14, 1989, staying all arbitration pending appeal is vacated forthwith.

In an order entered March 17, 1988, the Supreme Court, Nassau County, determined that a valid arbitration agreement exists between the parties for disputes arising from any alleged breach of any of the warranties and covenants contained in subdivisions (b) and (c) of section 6.03 of article 6 of the parties' lease. These provisions of the lease state:

"6.03 * * * (b) Landlord warrants that the structure (including but not limited to foundation, exterior walls and cross beams) and the roof of the Building, upon the completion thereof, will be free of all defects for a period of five (5) years; and Landlord, at its own expense, upon receipt of notice thereof from Tenant, shall correct any such defects for a period of five (5) years after the Commencement Date; and

"(c) Landlord warrants that Landlord's work (as herein defined) shall be performed and completed in a good and workmanlike manner consistent with the standards of construction practice prevailing in the locale for first-class commercial buildings of like quality and that the Building, upon the completion thereof, will be free of defects in workmanship and materials: and Landlord, at its own cost and expense,

upon receipt of notice thereof from Tenant, shall correct any such defects during the warranty Period".

The lease further provides that any dispute under article 6 of the lease shall be determined by arbitration.

The parties' dispute originated in 1987, when a violent rainstorm damaged the roof of the leased premises at 300 Jericho Quadrangle. The tenant refused to pay for the cost of a replacement roof, alleging that pursuant to the lease warranties, that was the responsibility of the petitioner landlord. Thereafter, the tenant's engineer allegedly discovered that the roof had not been constructed in accordance with the lease specifications.

In its original demand for arbitration, the tenant sought to recover the cost of a new roof. Thereafter, the tenant amended its claim for relief and sought damages not only for the cost of replacing the roof, but also "the diminution of rental value of the Building and Lease resulting from the Landlord's failure to construct the roof as specified by the lease".

The petitioner contends that this amended demand to recover damages for diminution of the rental value of the premises is not subject to arbitration. The landlord contends that this new theory of recovery does not fall within the warranties of the lease and thus is nonarbitrable under the limited arbitration clause in the parties' lease. We agree.

Since arbitration is a creature of contract, the courts may inquire into whether the parties have agreed to arbitrate the particular dispute (see, Matter of Dimson [Elghanayan], 19 NY2d 316), and the parties are not entitled to a judicial determination as to whether there is a valid agreement to arbitrate. If a court determines that the parties did not make an agreement to arbitrate, that concludes the matter and a stay of arbitration will be granted (see, e.g., Schubtex, Inc. v Allen Snyder, Inc., 49 NY2d 1; Matter of Marlene Indus. Corp. [Carnac Textiles], 45 NY2d 327).

Contrary to the tenant's claims, the order entered March 17, 1988, holding that its original demand for arbitration involved an arbitrable dispute, is not binding with respect to its amended demand. In that order, the court specifically relied on the fact that the dispute was limited to an alleged breach of warranties in the lease, stating: "Since the [tenant's] demand for arbitration expressly seeks a determination that the [Landlord] breached subdivision (b) and (c) of Section 6.03 of the lease; the Court holds that the dispute is subject to arbitration. The [Landlord's] argument that the [tenant] is

asserting a different claim is simply not reflected by the demand for arbitration".

Where the court finds that the parties may have made a valid agreement to arbitrate, but the particular agreement that they made was of limited or restricted scope and the particular claim sought to be arbitrated is outside that scope, then arbitration of that claim will be stayed *(see, e.g., Gangel v DeGroot,* 41 NY2d 840; *Matter of ITT Avis v Tuttle,* 27 NY2d 571; *see also, Information Sciences v Mohawk Data Science Corp.,* 43 NY2d 918). The agreement to arbitrate must be express, direct and unequivocal as to the issue or disputes to be submitted to arbitration *(see, Gangel v DeGroot, supra).* The law does not require the parties to arbitrate a claim which they did not intend to arbitrate *(see, Matter of Transpacific Transp. Corp. [Sirena Shipping Co.],* 9 AD2d 316). Nor do arbitrators have unfettered discretion in awarding damages. Rather, the damages must be of a nature that relates to the dispute submitted to the arbitrator *(see, Matter of Marchant v Mead-Morrison Mfg. Co.,* 252 NY 284, 300; *Matter of Transpacific Transp. Corp. [Sirena Shipping Co.], supra,* at 324).

Here the tenant elected to pursue the remedies provided in the warranty clause, and while it is not the tenant's only remedy under the lease, it is the only one subject to arbitration under the terms of the parties' lease. The tenant's claim for diminution of the rental value of the building is a separate claim which "is embodied in Section 2.01 (g) and 3.01 [of the parties' lease]. The failure to perform this obligation constitutes an independent breach of the lease agreement, which is actionable as a contract claim" *(see, Chemical Bank v We're Assocs. Co.,* Sup Ct, NY County, Oct. 5, 1988 [Shainswit, J.], *affd* 155 AD2d 260).

Therefore, the parties are directed to proceed to arbitration on the original demand which concerned the landlord's obligation to maintain and repair. Bracken, J. P., Rubin, Rosenblatt and Miller, JJ., concur.