Gibson, J.
The appeal requires us to determine the construction and effect of the arbitration agreement contained in an agency contract between respondent (Allied), a carrier engaged in the business of moving household goods, and appellant (Hollander), one of its many agents. The agents operate in allotted territories, serving Allied exclusively by soliciting moving business and providing warehousing, moving vans and services in the conduct of the business thus generated. The agents are Allied’s equal and only shareholders.
The dispute now before us erupted when Allied approved the application of American Imperial Movers, Inc. for a branch agency in a Chicago suburban area in which Hollander had long been Allied’s only agent. Hollander demanded arbitration of the dispute thus engendered, asserting that the agency contract provided that remedy. Allied resisted arbitration on two grounds, first, that the arbitration agreement contained in the contract was limited to disputes arising upon the attempted exercise by Allied of its right, under specified conditions, to terminate the agency contract, and, second, and in any event, that the arbitration of a territorial dispute of this nature would necessarily raise questions under the Sherman Antitrust Act and thus tender nonarbitrable issues, within the proscription of our decision in Matter of Aimcee Wholesale Corp. (Tomar Prods.) (21 NY 2d 621).
Initially, Allied’s motion to stay arbitration was denied, Special Term holding that the contract provision that “ [a]ny dispute between the parties ’ ’ would be arbitrated upon demand of the agent, Hollander, was expressed in “ clear, simple and unequivocal language ”, such as to constitute it “ a broad, all-encompassing arbitration agreement.” At the Appellate Division, however, a different result was reached and that court, although it too found the agreement unambiguous, considered that the only arbitration contemplated was that which Hollander might institute to test any action taken by Allied to terminate the agency for cause. The two courts differed also as to the antitrust issue tendered by Allied. Special Term found *39 that no such issue had been demonstrated, but considered that, in any event, appropriate remedies were available should the arbitrators pass upon such an issue and thus exceed their authority. The Appellate Division, on the other hand, held that Hollander’s sole objective was to exclude American from the territory to which Allied had admitted it, thus raising “ serious and substantial antitrust questions * * * sufficient to justify a permanent stay of the pending arbitration proceeding.”
We conclude, first, that the arbitration clause contained in the agency agreement is, indeed, clear and unambiguous and imposes no limitation upon the agent’s right, consistent with law, to elect arbitration of any dispute arising under the agreement; and, second, that the antitrust question so pervades the questions propounded in Hollander’s notice of intent to arbitrate as to proscribe consideration of any of them, with the exception of that addressed to Allied’s Buie 26, Hollander contending that Allied’s promulgation of that rule without provision for notice and hearing upon branch applications was in violation of the contract.
The agency contract before us is succinct and uncomplicated. It consists of three numbered divisions, the first containing covenants by the carrier (Allied), the second setting forth the covenants undertaken by the agent (Hollander), and the third, the parties’ mutual covenants. We are concerned with the third, which provides (except for indicated omissions, which are of a minor nature and are not here pertinent) as follows:
‘ ‘ 3. The Parties mutually covenant:
3.1 The term hereof shall be for a period of one (1) year from date and thereafter until terminated as follows: Agent may terminate this contract with or without cause upon ninety (90) days written notice to Carrier; Carrier may terminate this contract upon ten (10) days notice to Agent if and only if Agent for a period of ninety (90) days after notice by the Carrier so to do shall fail or refuse to cure or remedy any breach by him of this agreement claimed by the Carrier in such notice, unless within such period the Agent shall either
(1) demand arbitration as provided in section 3.2 hereof * * * ; or
*40 (2) file an action or suit in a court of competent jurisdiction to enjoin such termination * * * .
3.2 Any dispute between the parties, upon the written demand of Agent made within a period of ninety (90) days after such dispute shall arise, shall be submitted for decision to three arbitrators selected from the panel of the American Arbitration Association * * * .
3.3 This agreement may be assigned or transferred to any assignee of or successor to Agent who is qualified under the then reasonable standards for agencies established by Carrier.”
In contesting arbitration, Allied contends that the intent of the contract is that only disputes involving termination of the contract shall be arbitrated. This argument rests upon the language conferring upon Allied the right to terminate the contract if Hollander shall fail within 90 days to cure any breach of the contract asserted by Allied, unless Hollander "shall either (1) demand arbitration as provided in section 3.2 hereof * * * or (2) file an action ” (emphasis supplied). We do not consider that simply by referring to the arbitration section 3.2 as the procedural means of resolving an alleged contract breach warranting termination, the parties limited section 3.2 to that sole purpose. On its face, section 3.2 is independent, complete and unrestricted and in terms governs " [a].ny dispute ’ ’. True, as Allied argues, the provision contained in section 3.1 for termination 90 days after Allied shall give notice of a breach, unless within that -period the breach shall be remedied, is consistent with the provision contained in section 3.2 for a 90-day period within which Hollander may require arbitration of a“ dispute ’ ’; hut it is equally consistent with an intent to require notice of arbitration within 90 days, not only of any asserted breach but of any dispute of any nature. It may be remarked, tritely hut nonetheless significantly, that in drafting this basic form of agreement, upon which so great an enterprise largely rested, the parties could have readily and simply limited arbitration under section 3.2 to asserted breaches of contract warranting termination under section 3.1, had that been their intention. Instead, they chose to render arbitrable any “ dispute ”, a word used in section 3.2 for the first time. In short, we find nothing in the contract to justify the imposition, *41 by way of construction, of any limitation upon the provision that “ [a]ny dispute between the parties ” shall be arbitrated, upon Hollander’s demand.
It is appropriate to note, too, that this conclusion would be strongly supported by the uncontradicted extrinsic proof, including that as to certain revisions in the initial draft of the agreement[1], if ambiguity were to be found and resort had to extraneous evidence.
We turn, then, to the second ground of Allied’s opposition — that the arbitration would involve the determination of antitrust questions, in contravention of decisional law proscribing the treatment of such issues in arbitration (see Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 N Y 2d 621, supra), appellant’s notice specifying as among the disputes for arbitration Allied’s breach of its duties to Hollander by approving American’s branch application; by reason of which Hollander seeks revocation of such approval.[2]
Allied’s contention in respect of the antitrust question is emphasized, perhaps, by the fact that Allied and Hollander were among the defendants in a suit brought by the Department of Justice under the Sherman Act and were parties to a consent decree entered December 28,1945 in that action. Indeed, Allied’s *42 corporate reorganization, whereby its then member agents, some 325 in number, became its only stockholders, followed upon this litigation, as did the agency contracts, all in the form now before us, and as then approved by the Interstate Commerce Commission.
Revocation of American’s branch agency would, of course, restore the status quo and thus relieve Hollander of competition in that area from any Allied agent. The 1945 consent decree enjoins each defendant from all antitrust practices in the transportation business, the many proscriptions being specified in great detail. Appellant recognizes that the decree ‘ ‘ plainly prevents Allied from agreeing with an agent that it will not put a new branch in an area served by him ’ ’; but contends that Allied is by no means enjoined “ from listening to the available evidence, including that supplied by an affected agent, and then deciding the matter on its merits ’ ’; and this assertion underlies Hollander’s demand that the arbitration encompass also its contention that Allied’s Rule 26, governing the granting of branch agencies by Allied’s board of directors, is in violation of Hollander’s agency contract, insofar as the rule omits any provision for notice to the agent affected and a hearing in which the agent may participate. Hollander’s contention rests on section 2.1 of the agreement whereby the agent (Hollander) covenants: “ To perform and discharge loyally, diligently and efficiently, all the duties and responsibilities of such agency and employment, under Carrier’s complete and exclusive control, direction and supervision and in strict compliance with Carrier’s then reasonable rules and regulations, as well as with all laws, orders and regulations of competent governmental authority”.
Rule 26, so far as here pertinent, provides that: “ A branch shall be approved if the Board of Directors find (A) that the branch has, or will have, facilities for booking and terminal service as defined in Section 2 of Article XI of the By laws and (B) that the branch would be in the interest of public service and efficiency and the operation of the company in the conduct of its business and the effect of such branch would not be to unduly restrain or lessen competition in the transportation of household goods in interstate commerce between this company and any other common carrier of household goods in interstate commerce.”
*43 In respect of the notice of arbitration generally, the Appellate Division was quite correct in holding the arbitrators without authority to make an award that would, in the words of the opinion, “ stifle competition” or to confirm an “ exclusive [territorial] right ” in Hollander that would have that result. The Appellate Division was in error, however, in concluding that the antitrust question was applicable to all the issues sought to be arbitrated and thus precluded the arbitration of any of them. One issue can properly be extricated from the others, and that is the question posed as to the asserted contract breach on Allied’s part in failing to provide.for notice and hearing, under Rule 26, or otherwise. This presents an issue of construction within the province of the arbitrators and one determinable without reference to any antitrust complication. “ Of course, it may be assumed that the arbitrators will not render an award which would require the doing of an act prohibited by law or offensive to public policy. If there is such an award, the court has the power to vacate it.” (Matter of National Equip. Rental [American Pecco Corp.], 35 A D 2d 132, 135, affd. 28 N Y 2d 639, mot. for rearg. den. 28 N Y 2d 859).
The other issues enumerated by Hollander cannot be decided without reference to the antitrust issue. Thus, the first supposed issue stated in paragraph 1 of the notice, whether Allied breached its duty to Hollander by granting market and site clearance to American and by approving American’s branch application, cannot be divorced from the concept of Hollander’s exclusive rights to the territory and thus from the asserted antitrust violation; except as the notice indicates action pursuant to an invalid rule, and as to this latter aspect alone Hollander is entitled to arbitration. The issues propounded by paragraphs 2, 3 and 4 of the notice relate to the remedies available to Hollander if the asserted breach be found by the arbitrators to have occurred; but all questions of remedy are presently academic inasmuch as the arbitrators will be concerned only with the construction of the contract provision relating to Allied’s promulgation of Rule 26, and, upon a favorable finding, Hollander will be entitled to nothing more than a hearing before Allied’s board.
In sum, then, Hollander is entitled only to arbitration of the questions whether Allied breached the contract by promulgating *44 Rule 26 without thereby providing for notice and hearing and by granting American’s application pursuant to a rule which was in those respects defective.
The order of the Appellate Division should be reversed and the case remitted to the Special Term for further proceedings in accordance with this opinion.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Breitel and Jasen concur.
Order reversed, with costs, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.

. The following comparison is interesting:

Draft

“ 3.2 Any claimed breach of contract of an Agent upon the written demand of such Agent made within the period specified in section 3.1 hereof shall be submitted to the Board of Directors of the Carrier as a Board of Arbitrators * * *\”

Final

“ 3.2 Any dispute between the parties, upon the written demand of Agent made within a period of ninety (90) days after such dispute shall arise, shall be submitted for decision to three arbitrators selected from the panel of the American Arbitration Association * *

. The notice of intent to arbitrate enumerates the “disputes” as (1) whether Allied breached its duties to Hollander by granting market and site clearance to American and by approving American’s branch application, in violation of Hollander’s agency contract and of Allied’s rules; and by establishing rules which unreasonably fail to provide any notice or hearing to an agent when a new branch is to be established in an area being served by the agent; (2) whether Allied should be directed to revoke its actions in respect of American; (3) whether Hollander is entitled to monetary damages and in what amount; and (4) whether Hollander is entitled to any other or further remedies.