Chief Judge Breitel
(concurring). I concur for different reasons.
The issue on these appeals is whether the demands for arbitration raise public policy questions of such dimension that only the courts, and not arbitrators, may be permitted to resolve them. Since it is concluded that the public policy questions raised are not of such magnitude, arbitration should proceed in both cases, and stays should be denied. Hence, there should be an affirmance in the first case and a reversal in the second.
Involved in each case is the arbitration provision in the identical collective bargaining agreement between the school district and the teachers association. A grievance is defined as: "a complaint by an instructional employee that (1) there has been as to him a violation, misinterpretation or inequitable application of any of the provisions of this Agreement or (2) that he has been treated unfairly or inequitably by reason of any act or condition which is contrary to established Board policy or is contrary to established practice governing or affecting employees, except that the term 'grievance’ shall not apply to any matter as to which (1) a method of review is prescribed by law, or by any rule or regulation of the State Commissioner of Education having the force and effect of law, or (2) the Board of Education is without authority to act.” As the third step of its grievance procedure, the agreement provides: "A grievance dispute which was not resolved at Step 2 under the grievance procedure may be submitted by the aggrieved party to an arbitrator for a binding ruling if it *420 involves the application or interpretation of this Agreement. The arbitrator shall have the power only to interpret what the parties to the Agreement intended by the specific clause in the Agreement which is at issue.” Emphatically, the agreement does not include a broad arbitration clause. That term, a term of art, applies most often in the commercial context, and broad clauses are much less commonly found in collective bargaining agreements (compare the clause above with the one involved in Matter of Exercycle Corp. [Maratta], 9 NY2d 329, 332-333).
In each case, the teachers association seeks arbitration of a grievance with the district.
In the first case, the dispute is over application of a provision in the agreement establishing a joint committee, with members drawn from both administration and faculty, to "serve as a clearing house for ideas and suggestions for curriculum changes” and "to recommend to the Superintendent modifications of present educational programs”. Recommendations of the committee, as with all joint committees under the collective bargaining agreement, were to be "advisory” only, and could be accepted or rejected by the superintendent of schools.
In late 1974, the board of education directed the superintendent to implement a new educational program significantly affecting the curriculum in the high school. A teacher member of the joint committee brought the matter before the committee, but the administration members believed the matter inappropriate for the committee’s consideration. The teacher members formulated their own recommendation to the superintendent, but the administration members refused to vote on it, contending that, since the recommendation was not jointly developed, it was not appropriate for submission to the superintendent. The new program was implemented on February 1, 1975, and the teachers association filed a grievance. The subsequent demand for arbitration seeks tp have the district "cease and desist from the implementation” of programs not "approved” by the committee, and to have the district direct the administration members to participate in the committee’s deliberations and voting.
The grievances in the second case involve the district’s elimination of existing extracurricular programs and replacement with other programs without submitting the changes to the joint committee on extra assignments for its approval. *421 This committee, too, is only advisory by the terms of the collective bargaining agreement. The association’s three separate demands for arbitration request restoration of the old programs and cancellation of the new, with payment of lost compensation to teachers adversely affected by the changes in programs.
Supreme Court, in four separate orders issued by three different Judges, stayed arbitration of all the demands in the two cases. The same Appellate Division, with different panels, reversed in the first case and directed the parties to proceed to arbitration, but affirmed in the second case.
Quickly rejected should be the contention that the grievances asserted do not fall within the terms of the arbitration clause. It matters not in these cases that the arbitration clause is not a broad clause, for the submitted grievances, without question, involve "the application or interpretation of this Agreement.” Thus, the principal question is one of public policy.
It is settled law that arbitrators will not be permitted to decide disputes involving strong public policy in violation of law, however derived. But the public policy involved must, indeed, be substantial, for otherwise the freedom to resort to voluntary arbitration as an alternative forum for the resolution of disputes would be thwarted by endless attempts to invoke one purported public policy or another. Thus, even in governmental matters, including public schools, where public concern may be greatest, only rarely may public policy be invoked to stay arbitration (see Matter of Susquehanna Val. Cent. School Dist. [Susquehanna Val. Teachers’ Assn.], 37 NY2d 614, 616-617). In some sense, of course, almost every issue in public or private arbitration will involve some degree of "public policy”, however minimal.
It is not only in governmental matters that a strong public policy will limit the scope of arbitration, however broad the arbitration clause. Thus, for example, contract questions involving substantial issues of antitrust law, regulated directly by statute, may be resolved only by courts, not by arbitrators (Matter of Allied Van Lines Corp. [Hollander Express & Van Co.], 29 NY2d 35, 41-43; Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 NY2d 621, 626-630). Similarly, for another example, the issue of usury in lending agreements will not be permitted to go to arbitration (Durst v Abrash, 22 AD2d 39, 40-43, affd 17 NY2d 445). And, in custody matters, courts will *422 review the actions of arbitrators notwithstanding an agreement between the parents to settle the custody matter by arbitration (see Schneider v Schneider, 17 NY2d 123, 127-128; compare Sheets v Sheets, 22 AD2d 176, 178, with Nestel v Nestel, 38 AD2d 942, 943; see, also, Hirsch v Hirsch, 37 NY2d 312, 315-316). This is so because no device will be enforced if it will offer the opportunity to frustrate explicit prohibitions of illegal or gravely immoral conduct, or displace nondelegable judicial authority.
Arbitration, despite or because of its many merits, provides a framework for dispute resolution far different from the traditional litigation framework. Arbitrators are permitted to apply their own "law or equity”. They are not restricted by legal rules of evidence. Perhaps most important, an arbitration award may not be vacated for errors of law or fact made by the arbitrators. (Matter of Associated Teachers of Huntington v Board of Educ., 33 NY2d 229, 235; Matter of Raisler Corp. [New York City Housing Auth.], 32 NY2d 274, 282-283; Lentine v Fundaro, 29 NY2d 382, 385-386.) This is so even if the award indicates that the arbitrators ignored or misapplied accepted rules of law (see Matter of Schine Enterprises [Real Estate Portfolio of N. Y.], 26 NY2d 799, 801). Thus, it must be with caution that a demand for arbitration should be approached to assure that, by use of arbitration, no strong public policy will be frustrated.
Not every issue asserted to be one of public policy, however, requires that arbitration be stayed. The public policy must be a strong one, amounting to gross illegality or its equivalent. Unless the illegality or other strong public policy has a readily identifiable source in the statutes or common-law principles, it is unlikely to be the kind of public policy that will result in a stay of arbitration (cf. Matter of Susquehanna Val. Cent. School Dist. [Susquehanna Val. Teachers’ Assn.], 37 NY2d 614, 616-617, supra; Syracuse Teachers Assn. v Board of Educ., 35 NY2d 743; Board of Educ. v Associated Teachers of Huntington, 30 NY2d 122, 129-130). Not to be confused with these grave matters, unsuitable and impermissible for resolution by arbitration, are the far more numerous matters in which the public may take a general interest and be affected. Arbitrability of disputes in this broader range of matters is not forbidden by strong public policy.
Any dispute involving a public enterprise involves issues of some public interest and concern. But it should be obvious *423 that most of these issues do not involve strong public policies that would or should prevent arbitration. Instead, for the issue to be nonarbitrable, it must generally involve some statutory or constitutional duty or responsibility so important that the public agency will not be permitted to delegate it (see Board of Educ. v Areman, 41 NY2d 527, 532-533). Thus, the awarding of tenure to public school teachers is not arbitrable (Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774, 776-777). To repeat, this is not because teacher tenure is a matter of public interest, but because the statutes provide that tenure decisions are to be made by the educational authorities (Education Law, §§ 2509, 2573, 3012, 3013).
Because - of the broad powers of the arbitrators once a demand proceeds to arbitration, a demand, if attacked on public policy grounds, must be evaluated before it is permitted to go to arbitration. If the demand presents only issues beyond the scope of arbitration, whether for reasons of strong public policy or otherwise, it is subject to a stay of arbitration under CPLR 7503. And, as noted later, where a strong policy affects an arbitration award even that award will be subject to judicial oversight.
Difficulties arise, however, when the demand for arbitration combines arbitrable issues with those that are beyond the scope of arbitration. When the issues are severable, of course, arbitration may be stayed with respect to some issues while it proceeds as to others (see Matter of Allied Van Lines Corp. [Hollander Express & Van Co.], 29 NY2d 35, 41-44, supra). In this manner, the parties’ agreement to arbitrate may be preserved to the extent consistent with public policy.
When issues of strong public policy are inextricably intertwined with the other issues raised by the demand, solution is difficult. To be sure, censoring the issues the arbitrators may consider is not favored (see, e.g., Matter of Paver & Wildfoerster [Catholic High School Assn.], 38 NY2d 669, 677; Matter of Transpacific Transp. Corp. [Sirena Shipping Co.], 9 AD2d 316, 320, affd 8 NY2d 1048; Matter of Spectrum Fabrics Corp. [Main St. Fashions], 285 App Div 710, 714, affd 309 NY 709). Nevertheless, as discussed earlier, the courts will undertake the difficult task when required by strong public policy, however derived (see Durst v Abrash, 22 AD2d 39, 40-43, affd 17 NY2d 445, supra; Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 NY2d 621, supra).
It is not generally permissible when issues of strong public *424 policy are involved to allow the demand to proceed to arbitration subject to subsequent review by the courts on application to vacate the award (CPLR 7511). As noted earlier, the arbitrators have broad powers to apply their own substantive and procedural rules during the arbitration. Once the demand has gone to the arbitrators, the courts may not examine the deliberative processes that led to the award. Thus, unless the award on its face demonstrates that the arbitrators have exceeded their powers, a court may not, on motion to vacate an award, be able to ascertain whether strong public policy issues were considered and decided by the arbitrators. (See Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 NY2d 621, 626-627, supra.) To assure that issues of illegality and similar strong public policy remain outside the purview of arbitration, consideration of those issues on motion to stay arbitration is' appropriate.
Of course, when the only issue of strong public policy or illegality is the arbitrators’ power to grant a particular remedy, a stay of arbitration is not necessary. While arbitrators may not grant tenure to teachers, a dispute over tenure may nevertheless proceed to arbitration for resolution of arbitrable issues, subject to vacatur only if the arbitrators exceed their power by awarding tenure to the aggrieved teacher (Matter of Candor Cent. School Dist. [Candor Teachers Assn.], 42 NY2d 266, 271-272; Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774, 778, supra; see, also, Garrity v Lyle Stuart, Inc., 40 NY2d 354, vacating an award of punitive damages- because of absence of power in the arbitrator to provide such a remedy).
Turning to the cases at bar, it should be evident that the public policy questions raised by the school district do not raise issues of illegality or similar strong public policy requiring stay of arbitration.
The school district contends that its statutory duty ”[t]o have in all respects the superintendence, management and control of the educational affairs of the district” prevents the board from delegating to the joint committees a right of approval of the changes in programs (Education Law, § 1709, subd 33). But the statutory provision does not foreclose the district from concluding, as a matter of educational policy, that curricular and extracurricular changes should be made only with the advice or approval of the teachers for the limited term of the collective bargaining agreement. Whether *425 wise or not, such a policy decision does not contravene the statute, nor does it violate any other strong public policy, however derived (cf. Matter of Susquehanna Val. Cent. School Dist. [Susquehanna Val. Teachers’ Assn.], 37 NY2d 614, 616-617, supra). Undoubtedly, a different question, and perhaps a different result, would be presented if the school board would attempt by collective bargaining agreement or otherwise to restrict the freedom of school superintendence for a protracted period beyond its term of office (cf. Matter of Board of Educ. v Yonkers Federation of Teachers, 40 NY2d 268, 275).
Moreover, it is not for the court to decide whether the school district did, in fact, delegate rights of approval to the joint faculty-administration committees. It is for the arbitrators to interpret the language of the collective bargaining agreement.
It is interesting and significant that in its briefing on these appeals the teachers associations never contended that the joint committee’s recommendations would be more than advisory. However, "advisory” and other words in dispute, although they might be interpreted otherwise by the court, may be interpreted by the arbitrators as they see fit, but hopefully with integrity and respectful of the language of the agreement directed to them in making their determinations. Arbitrators may choose to do justice by whatever means they see fit, so long as they do not exceed their powers.*
It is also for the arbitrators to decide what remedies, if any, might be appropriate even if the committees were only to be advisory, but were improperly prevented from advising. The arbitrators certainly have the power to fix an appropriate remedy for any violation by the district of procedural provisions of the collective bargaining agreement (Matter of Candor Cent. School Dist. [Candor Teachers Assn.], 42 NY2d 266, 272, supra).
*426 To recapitulate, issues of strong public policy, usually amounting to illegality, may not be decided by arbitrators. The principle is not, however, of broad application, for many issues in which the public has a significant interest are unquestionably subject to arbitration. Although to justify a stay of arbitration the strong public policy involved need not be drawn from statutory or decisional prohibitions, the policy must emanate from some authoritative source. Generally, oblique reference to unparticularized statutory provisions of management and control does not authorize a stay of arbitration.
Accordingly, I concur in result that the arbitration should proceed in each case.
Judges Gabrielli, Jones, Fuchsberg and Cooke concur with Judge Wachtler; Chief Judge Breitel concurs in result in a separate opinion in which Judge Jasen concurs.
In Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn.: Order affirmed, without costs.
In Port Washington Union Free School Dist. v Port Washington Teachers Assn.: Order reversed, etc.

 Arbitrators are not free to be arbitrary even if, because their awards are not subject to judicial review for errors of law and fact, the courts may not oversee their determinations. It is because of the unreviewability of arbitration awards that agreements with arbitration provisions may restrict the scope of arbitration, or on the contrary, leave the arbitration provision more or less broad, but still by other provisions instruct the arbitrators on the standards they are to follow. In the latter instance, the only sanction is provided by the integrity of the arbitrators. It is notable that the arbitration provisions of the instant collective bargaining agreement instructed: "The arbitrator shall have power only to interpret what the parties to the Agreement intended by the specific clause in the Agreement which is at issue” (p 416).